STATE OF WEST VIRGINIA

*v.*

GERALD LEE BOLLING

(No. 13850)

Decided July 14, 1978.

*Herbert H. Henderson* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *David F. Greene,* Assistant Attorney General, for defendant in error.

MILLER, JUSTICE:

Gerald Lee Bolling was convicted of arson under W.Va. Code, 61-3-5, by the burning of his wife's insured automobile, a 1974 Oldsmobile, with intent to injure or defraud the insurer. He assigns several errors which, for reasons set out herein, we deem insufficient to warrant a reversal of the case.

His first assignment, that the evidence was insufficient to support the jury verdict, is without merit. The legal standard for testing the sufficiency of the evidence to support a guilty verdict in a criminal trial was discussed in *State v. Starkey,* W. Va., 244 S.E.2d 219 (1978), where the following rule is stated in the first syllabus:

"In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is suffi-

cient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done."

The record discloses that the State's chief witness, James Vornholt, testified he was present when the defendant burned the car after pouring gasoline on it. Vornholt had followed the defendant from Huntington to an isolated area in Wayne County where the car was burned. Vornholt drove a rental car, which the defendant had leased earlier that day.

Vornholt testified that on the afternoon prior to the fire he helped the defendant remove a number of items of personal property from the car. Among these were a radio-telephone, calculator and briefcase, which items were similar to those listed by the defendant on his claim to the insurance company.

The insurance adjuster who handled the claim testified he paid $9,425.39 on behalf of the insurance company. Approximately $4,000.00 of this amount was due the finance company.

The defendant testified he had been with Vornholt on the evening in question, but denied burning the car. He stated that he had parked his wife's car in downtown Huntington and proceeded to visit some bars with Vornholt and another friend. At around 1:00 a.m., he left his friends to go home, and when he went to his wife's car it was missing. At first he thought his friends were playing a joke on him, but when he learned they were not, he called the police to report the car as stolen. Several days later the police located the burned car.

He admitted renting a car, but stated this was because he and his friend Vornholt did not want to be seen driving in the defendant's wife's car when they were out without their wives, who had taken the Vornholt chil-

dren to an amusement park for the afternoon and evening.

Most of the State's evidence rested on the testimony of Vornholt, an admitted accomplice who was co-indicted for the same crime. In our jurisdiction, as in a majority of others, a conviction can be obtained on the uncorroborated testimony of an accomplice. In *State v. Humphreys*, 128 W. Va. 370, 381, 36 S.E.2d 469, 474 (1945), the rule is stated along with its cautionary qualification:

> "The principle that, though a conviction may be had upon the uncorroborated testimony of an accomplice, such testimony must be received with caution, and that the jury in a criminal case, upon request, should be so instructed, is based on sound reason and is sustained by the decisions of the appellate courts in many jurisdictions."

The trial court did give a cautionary instruction on the accomplice's testimony. We hold that there is sufficient evidence to support the jury verdict.

The defendant next urges that it was error to reject his tendered Instruction No. 4, which would have told the jury that since Vornholt was called by the State and did not waive his immunity against self-incrimination, he could not thereafter be prosecuted.[1] The record discloses that Vornholt was called by the State and testi-

---

[1] The entire Instruction read:

"The Court instructs the jury that James Vornholt is named as a defendant in the indictment in this case and that since the State has called him as a witness he cannot thereafter be prosecuted for the offense about which he testifies since the said James Vornholt did not, at the time he testified, waive his immunity from testifying as to matters which might incriminate him. You are therefore instructed that you are entitled to consider that by testifying he gained immunity in determining that weight, if any, you should give to his testimony."

The term "immunity" is inapt since it is the "privilege" against self-incrimination that can be waived. Immunity is against prosecution and is granted by the State pursuant to a statute which abolishes the privilege against self-incrimination in return for immunizing the individual from prosecution on matters arising from his incriminating statements. W. Va. Code, 57-5-2.

fied freely about the events leading up to and including the burning of the car. He made no assertion of his privileges against self-incrimination, and consequently there was no effort on the part of the State to seek immunity under W.Va. Code, 57-5-2, *See State v. Abdella*, 139 W. Va. 428, 82 S.E.2d 913 (1954); *State v. Simon*, 132 W. Va. 322, 52 S.E.2d 725 (1949).

The basic flaw in the defendant's tendered instruction is that it is premised on an erroneous statement of fact and principle of law. Factually, the witness Vornholt did not assert his privilege against self-incrimination when he testified, and there was no showing that he had received statutory immunity. Thus, the legal conclusion in the instruction "that by testifying he gained immunity" is wrong. We have consistently held that instructions in a criminal case which are confusing, misleading or which incorrectly state the law should not be given. *State v. Belcher*, W. Va. S.E.2d (1978) (No. 13863); *State v. Travis*, 139 W. Va. 363, 81 S.E.2d 678 (1954); *State v. Blankenship*, 137 W. Va. 1, 69 S.E.2d 398 (1952).

Defendant's next assignment of error is that the State suppressed exculpatory evidence. This argument is based on affidavit given after the trial by Betty Rowe to defense counsel. She had been subpoenaed by both the State and the defense, but was not called by either side to testify at the trial. In her affidavit, she stated that Tim Salmons, who the State had subpoenaed for trial but who also was not called upon to testify, had made statements to her which were inconsistent with the statement he had given to the prosecuting attorney. The exact nature of the inconsistencies are not given in the affidavit and the record does not contain the statement given by Salmons to the prosecutor.[2]

---

[2] According to the State's witness Vornholt, Salmons was with him and the defendant on the evening the car was burned and accompanied them to the burning. Salmons was co-indicted and there was some evidence at the trial suggesting he might have been given immunity. Affiant Rose stated that Salmons admitted to her he "was out to 'get' Bolling and that if he were promised immunity he would testify against Bolling."

From the record the best that can be said is that Betty Rowe was subpoenaed by the defendant in order to discredit testimony the State was expected to offer through Salmons. When the State elected not to use Salmons, the defense was not able to use Rowe.[3]

The duty of the State to turn over exculpatory evidence to a criminal defendant was discussed at some length in *Wilhelm v. Whyte*, W. Va., 239 S.E.2d 735 (1977). As demonstrated by both *United States v. Agurs*, 427 U.S. 97, 49 L. Ed. 3d 342, 96 S.Ct. 2392 (1976), and *Moore v. Illinois*, 408 U. S. 786, 33 L. Ed. 2d 706, 92 S.Ct. 2562 (1972), the outer boundaries of this doctrine are still not

---

[3] At the conclusion of all the evidence, defense counsel stated:

"Apparently, the defendant has some reservations about the conduct of the trial. Of course, we worked on numerous evenings for hours in a stretch on each evening, on the evidence and in interviewing and conferring with witnesses and so forth.

"However, the big part of the work was done in an effort to obtain rebuttal testimony as to testimony of Tim Salmons, who actually initiated the whole doggone proceedings by statements after obtaining immunity and so forth, and Tim Salmons has not testified against this defendant.

. . . .

"The testimony of Betty Rowe was for the purpose of showing that Salmons had conspired to get the defendant, would actually make him money by getting the defendant. However, Salmons has not testified. We can't use Betty Rowe as a rebuttal witnesses."

New defense counsel appeared on the post-trial motions and submitted the affidavit of Betty Rowe and raised the point of the suppression of exculpatory material. The substance of this argument was:

"MR. MEDEIROS: Now my understanding with trial counsel is that Betty Rowe was subpoenaed by the defendant. I believe she was also subpoenaed by the State, too.

"MR. CHAFIN: True.

"MR. MADEIROS: All right, she was subpoenaed by the defendant with the idea in mind of impeaching the testimony of a co-defendant, Tim Salmons, who was not subpoenaed by the defense. He was subpoenaed by the State.

"MR. CHAFIN: That's right.

"MR. MADEIROS: All right, and the State did not put Tim Salmons on, so the defense did not use—this is what I got from trial counsel—did not use Betty Rowe because since the State did not put Salmons on, they had no need for her to go on to impeach the credibility of Salmons."

fully charted. We are not aware of any case, however, where the doctrine has been successfully asserted upon facts analogous to the ones here considered. *See* Annot., 34 A.L.R.3d 16 (1970).

The suppression claim is not based on a claim of concealment by the prosecution of evidence tending to exculpate the defendant that could have been brought out through questioning of the witness Salmons. Nor is the situation analogous to that in *Agurs* and *Moore*, where a witness was used by the State and the claim was made that the prosecutor suppressed material which the defense could have utilized to impeach the witness' testimony. The high water mark of the defendant's claim is that he was denied an opportunity to impeach a State's witness who was not called to testify.

The core of the doctrine of suppression of evidence is that it must relate to some evidence that would be relevant to an issue at the trial. In the absence of the State's offering Salmons as a witness, there was no issue of credibility on which impeachment testimony could be introduced.[4]

Finally, the defendant asserts that the prosecuting attorney made several prejudicial remarks to the jury in his closing argument and, as a result of the court reporter's failure to take down the closing arguments, prejudicial error occurred.

The question of what portions of a criminal trial should be recorded by a court reporter is a subject of increasing judicial attention.[5] Of primary concern is the need to have an adequate record for appellate review.

---

[4] It should be emphasized that the result on this point would be different had the defendant demonstrated the State possessed information that the witness Salmons had exculpatory evidence and failed to reveal this information to the defendant. *United States v. Agurs*, 427 U.S. 97, 49 L. Ed. 2d 342, 96 S.Ct. 2392 (1976); *Giles v. Maryland*, 386 U.S. 66, 17 L. Ed. 2d 737, 87 S.Ct. 793 (1967); *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S.Ct. 1194 (1963); *State v. McArdle*, 156 W. Va. 409, 194 S.E.2d 174 (1973).

[5] *Hardy v. United States*, 375 U.S. 277, 11 L. Ed. 2d 331, 84 S. Ct. 424 (1964); *United States v. Selva*, 559 F.2d 1303 (5th Cir. 1977);

The federal courts have solved the problem by rather uniformly interpreting the federal act on court reporters, 28 U.S.C. § 753, to require in criminal cases the reporting of all proceedings had in open court.[6] However, a reversal for failure to comply with the statutory standard will not occur unless some error or prejudice is shown. Annot., 12 A.L.R. Fed. 584 (1972).

When we turn to state courts we find their approach varies, and in general turns upon a construction of their court reporter acts. Most state reporter statutes fall into two categories. In the most common category are those statutes which do not require the court reporter to record all or designated parts of the proceeding unless ordered by the judge or requested by the parties.[7] Under

*United States v. Piascik*, 559 F.2d 545 (9th Cir. 1977); *Herron v. United States*, 512 F.2d 439 (4th Cir. 1975); *United States v. Workcuff*, 422 F.2d 700 (D.C. App. 1970); *Stirone v. United States*, 341 F.2d 253 (3rd Cir. 1965); *Parrott v. United States*, 314 F.2d 46 (10th Cir. 1963); *Commonwealth v. Swenson*, 331 N.E.2d 893 (Mass. 1975); *People v. Merriweather*, 213 N.W.2d 756, 50 Mich. App. 751 (1973); *State v. O'Clair*, 292 A.2d 186 (Me. 1972).

[6] 28 U.S.C. § 753(b) provides in material part that a federal court reporter:

". . . shall record verbatim . . . (1) all proceedings in criminal cases had in open court; (2) all proceedings in other cases had in open court unless the parties with the approval of the judge shall agree specifically to the contrary; and (3) such other proceedings as a judge of the court may direct or as may be required by rule or order of court or as may be requested by any party to the proceeding."

[7] Ohio Rev. Code Ann. § 2301.20 (Page):

". . . if either party to the suit, or his attorney, requests the services of a shorthand reporter, the trial judge shall grant the request, or such judge may order a full report of the testimony or other proceedings, in which case such shorthand reporter shall take accurate shorthand notes of the oral testimony or other oral proceedings, . . ."

Pa. Stat. Ann. tit. 17 § 1803 (Purdon):

". . . to report the proceedings of the said court, whenever requested so to do by any defendant or defendants or his, her or their counsel . . ."

Tex. Code Crim. Proc. Ann. art, 40.09(4) (Vernon):

"At the request of either party the court reporter shall take shorthand notes of all trial proceedings, including voir dire examination, objections to the court charge, and final arguments. . . ."

this type of statute it is generally held that in the absence of a request, it is not error to omit reporting arguments of counsel. The court's rationale is that the statute creates no mandatory duty on the reporter until a request is made. *Jackson v. State*, 491 S.W.2d 155 (Tex. Crim. 1973); *Jandrt v. State*, 43 Wis. 2d 497, 168 N.W.2d 602 (1969). Conversely, once a request for recordation is made under such a statute, it is held error not to record. *Thomson v. State*, 389 P.2d 526 (Okla. Crim. 1964); *Moore v. State*, 363 S.W.2d 477 (Tex. Crim. 1963).

The other category is similar to the federal statute, 28 U.S.C. § 753, in which there is a general duty to report all of the proceedings and no provision for a request is mandated.[8] The several courts which have had occasion to construe such statutes are not entirely harmonious.

---

There are some statutory variations in this first category. For example, the Wisconsin statute requires the reporter to take "all testimony" except as otherwise provides Wis. Stat. Ann § 256.55, and under subsection (3) thereof, it is provided:

"Voir dire examinations in any civil or criminal action need not be reported unless ordered by the court. Opening statements and closing arguments shall be reported in any action upon request of a party or upon order of the court. A request to report opening or closing argument shall be made on the record before any such argument has commenced."

The Oklahoma statute, after providing that the court reporter shall take down all of the proceedings when requested, goes on to state:

"An attorney in any case pending shall have the right to request of the court or the official court reporter that all such statements or proceedings occurring in the presence of the official court reporter, or when his presence is required by such attorney, shall be taken and transcribed. A refusal of the court to permit, or, when requested, to require any statement to be taken down, upon the same being shown by affidavit or other direct and competent evidence, to the Supreme Court, shall be deemed prejudicial error, without regard to the merits thereof." [Okla. Stat. Ann. tit. 20, § 108 (West)]

[8] Idaho Code § 1-1103:

"The said reporter shall correctly report all oral proceedings had in said court and the testimony taken in all cases tried before said court, but the parties may, with the consent of the judge, waive the recording by such reporter of any part of the proceedings or testimony."

The Idaho Court interprets its statute in a manner analogous to the federal courts. It holds that the statute mandates recording all of a criminal proceeding including the closing arguments. It does not, however, consider the failure to record a portion of a criminal proceeding *per se* reversible error, but requires a showing of some prejudice. *State v. Wright*, 97 Idaho 229, 542 P.2d 63 (1975).

While stating the better practice is to record all matters, the Kansas Court appears to construe its statute as not mandating the recordation of closing argument. Upon a showing of prejudice the matter may be grounds for reversal. *State v. Guffey*, 205 Kan. 9, 468 P.2d 254 (1970); *State v. Perkins*, 193 Kan. 589, 396 P.2d 365 (1964).[9]

South Carolina has concluded without any discussion of the subject that its statute does not mandate the recording of the closing argument. *State v. Bolton*, 226 S.C. 444, 223 S.E.2d 863 (1976). It does permit challenge

---

Kan. Stat. Ann. § 20-903:

"It shall be the duty of the official reporter to attend upon the sessions of the court, or divisions thereof, of which he is reporter, at each term, when required by the judge thereof, and to take full stenographic notes of the evidence and of oral proceedings in such cases tried before said court or division as the judge thereof shall direct."

S.C. Code, § 14-15-30:

"Every stenographer so appointed, under the direction of the presiding judge of his circuit, shall take full stenographic notes of all proceedings including the rulings and charge of the court in every trial thereat."

[9] Subsequent to these decisions, the Kansas Legislature repealed § 20-903 and by statute gave to the Supereme Court of Kansas the power to prescribe duties for court reporters. § 20-917. Effective January 10, 1977, the Kansas Supreme Court promulgated Rule No. 354. No cases construing this rule has been found, which reads as follows:

"It shall be the duty of the official court reporter to attend upon the sessions of court to which the reporter is assigned when required by the judge thereof or by the administrative judge. The official court reporter shall take full stenographic notes of the proceedings tried before the court as the judge thereof shall direct."

to the argument by way of objection and statement summary of the improper remarks. *State v. Meeham,* 160 S.C. 111, 158 S.E. 151 (1931).

Our statute on court reporters falls into the second category as discussed above. There are two pertinent provisions, both of which are broad and which require the recording of the proceeding had and testimony given. W.Va. Code, 51-7-1 and -2.[10]

This Court has not had occasion to consider what must be reported in a criminal trial under the provisions of W.Va. Code, 57-7-1 and -2. We view these statutes as containing language similar to the federal act, 28 U.S.C. § 753, and conclude that a rule similar to that evolved by the federal courts is required. Under such a rule all proceedings occurring in the criminal trial are required to be reported. We also adopt the federal standard that the failure to report all of the proceedings may not in all instances constitute reversible error.

The extent of what should be reported is well stated in *United States v. Piascik,* 559 F.2d 545, 550-551 (9th Cir. 1977):

"... that court reporters be required to record (but not transcribe unless requested for appellate purposes) the *voir dire* examination of ju-

---

[10] The material portion of W.Va. Code, 51-7-1, reads:

"The circuit courts of the several judicial circuits in this State, or the judges thereof in vacation, or the judges of any intermediate, criminal or common pleas court, are hereby empowered and authorized to appoint competent shorthand reporters to take and report, under such regulations as such judges, or any of them, may prescribe, the proceedings had and the testimony given in any case, either civil or criminal, or in any other proceeding had in such court, including the taking of testimony before the grand jury of such court for the use of the prosecuting attorney of the county, and in proceedings before the judge of such court in vacation, and otherwise to aid the judge in the performance of his official duties."
W.Va. Code, 51-7-2, reads:
"It shall be the duty of such reporter to take full shorthand notes of the testimony and proceedings in which his services may be required, such notes shall be deemed and held to be official and the best authority in any matter in dispute."

rors, the opening statements of counsel, and the closing arguments, as well as any bench conferences when requested by the court or counsel. These matters are as much a part of the proceedings in criminal cases as are the testimony of witnesses, the rulings of the court, the motions and objections of counsel, etc. In short, anything that transpires in *open court*, with the possible exception of the reading of a deposition, should be recorded by the reporter. Local practice cannot alter the statute." [Emphasis in original]

There are, we believe, sound reasons for this rule. As earlier mentioned, the primary ground is to provide the availability for an adequate record for appeal.[11]

This Court has on a number of occasions discussed problems in connection with the adequacy of a record. Without attempting to be exhaustive on the subject, the following cases serve to demonstrate the reason why the full reporting in a criminal proceeding is essential to reduce error and frivolous claims.

*State v. McKinney*, W. Va., S.E.2d (1978) (No. 13849) (record silent as to whether *in camera* hearing held on suppression motion); *Fields v. Whyte*, W. Va., 242 S.E.2d 463 (1978), and *State v. Boyd*, W. Va., 233 S.E.2d 710 (1977) (record silent as to presence of accused at a critical stage of the criminal proceeding); *Smoot v. Dingess*, W. Va., 236 S.E.2d 468 (1977) (lack of record in contempt hearing); *Johnson v. McKenzie*, W. Va., 235 S.E.2d 138 (1977) (lack of record for appeal); *Call v. McKenzie*, W. Va., 220 S.E.2d 665 (1975); *State ex rel. Clancy v. Coiner*, 154 W. Va. 857, 179 S.E.2d 726 (1971) (record on plea bargaining); *State v. Blosser*, W.Va., 207 S.E.2d 186 (1974) (absence of record waiving right to counsel and right of self-incrimination).

The question of when the failure to report portions of criminal proceedings will constitute reversible error can-

---

[11] It is, of course, obvious that the fact the court reporter is required to record the entire proceedings, it is only necessary to transcribe those portions of the record that are genuine to the appeal.

not be answered by a mechanistic rule. Generally, the failure to report some part of the proceeding will not alone constitute reversible error. Some identifiable error or prejudice must be shown by the defendant.

The present case serves as an apt illustration of this principle. The final arguments were not reported, but the record does show that following the closing arguments of counsel and after the jury retired, defense counsel then made his objection to certain remarks made by the prosecutor, which were placed on the record.[12]

It is apparent from the wording of defense counsel's objection that he had not raised the point during the prosecutor's closing argument so that the court would have an opportunity to take corrective action. Thus, there is an element of untimeliness inferred from the manner in which the objection was placed on the record. Obviously, the question of timeliness of the objection cannot be absolutely controlling, since the lack of a contemporaneous record to determine if in fact an objection was made will at times be at issue.

A second consideration will also be relevant, and that is the nature of the claimed prejudice or error. Here we

---

[12] "MR. DANIEL: I would like the record to show that while the closing argument was not being taken down, that the Prosecutor did in words or effect say that by their verdict the jury could tell the defendant that people like him were not to come into Wayne County and commit offenses, and that the defendant was not to tell the people of Wayne County what to do but it was for the jury to tell him what to do when he came into Wayne County. I believe it was an appeal to prejudice and passion rather than based on the evidence in this case, and we ask that the jury be instructed to ignore those statements made by the Prosecutor in his closing argument.

"THE COURT: The Court feels that to call the jury out of the jury at this time would emphasize anything, if it was error. The Court further feels that it was not error in that the evidence amply discloses that the defendant, or at least the evidence shows that the defendant made this statement, and that it is in evidence, and that the Prosecutor did not go outside the evidence. I will overrule the motion."

have identified the substance of the claimed prejudicial remark "that the defendant was not to tell the people of Wayne County what to do but it was for the jury to tell him what to do when he came into Wayne County." We do not consider this remark in and of itself to be sufficiently prejudicial to warrant a reversal. *State v. Dunn,* W. Va, S.E.2d (1978) (No. 13771).

We would observe that a different result might obtain where the claim is made that prejudicial remarks or misstatements of the facts or law had occurred in a complex fashion such that it was not possible to accurately portray their meaning absent a record of the argument.

In short, we do not intend to thrust the burden on the defendant to piece together a precise reconstruction of the missing record before he may claim error. It will be sufficient if he can demonstrate that some error or prejudice has resulted and this is directly related to the lack of a portion of the record.

For the foregoing reasons, the judgment of the Circuit Court of Wayne County is affirmed.

*Affirmed.*