359 S.E.2d 858

**STATE of West Virginia**

v.

**Leonard B. CHAMBERLAIN.**

**No. 16955.**

Supreme Court of Appeals of West Virginia.

July 22, 1987.

Gayle Fidler, Asst. Atty. Gen., for appellant.

Michael F. Gibson, Robert M. Nunley, Princeton, for appellee.

Per Curiam:

On October 28, 1983, Leonard B. Chamberlain was convicted by a Mercer County jury of delivery of marijuana. On appeal, he asserts two evidentiary errors. First, he contends that the trial court improperly admitted testimony relative to collateral crimes. Second, he argues that the State did not adequately prove the chain of custody of approximately three pounds of marijuana which was introduced at trial. Other assignments of error include claims of ineffective assistance of counsel and of preju-

dice resulting from delay in the preparation of trial transcripts. We find no error and affirm the conviction.

## I.

Early in 1983, Trooper J.R. Howell of the Department of Public Safety began to investigate drug trafficking in Mercer County, West Virginia. Evidence developed during his investigation implicated one William Gordon, who agreed to cooperate with the police. Mr. Gordon revealed to the police the identity of his supplier, David Humphreys, but he was unaware of others in the distributive chain. At Trooper Howell's request, Mr. Gordon arranged to purchase three pounds of marijuana from Mr. Humphreys. On the morning of March 16, 1983, he telephoned Mr. Humphreys and requested a "buy." Later in the day, at approximately 7:30 p.m., Mr. Humphreys arrived at Mr. Gordon's house with a brown grocery bag in his possession. The grocery bag contained over three pounds of marijuana wrapped in six smaller plastic bags. Trooper Howell seized the grocery bag and its contents, and advised Mr. Humphreys of his *Miranda* rights.

After interrogating Mr. Humphreys, it was learned that he had obtained the three pounds of marijuana from two other distributors, Gary Butt and Earl Noland. Trooper Howell subsequently questioned and secured the cooperation of both Mr. Butt and Mr. Noland. They disclosed that the marijuana in question had been provided by the defendant.

Within a day or two, Trooper Howell attempted to arrange a second purchase from the defendant through the assistance of Mr. Butt and Mr. Noland. The defendant apparently met with Mr. Noland, but advised him that he had no more marijuana. After this attempted purchase proved unsuccessful, an indictment was sought against the defendant based upon the information already provided by the informants. An indictment was returned in June, 1983.

The trial commenced on October 27, 1983. The State's principal witnesses were Mr. Butt and Mr. Noland, who detailed the events surrounding their purchase of the marijuana from the defendant. Their testimony revealed that at 11:00 a.m. on March 16, 1983, Mr. Humphreys telephoned Mr. Noland to request three pounds of marijuana. Thereafter, Mr. Noland and Mr. Butt traveled together by pick-up truck to Mr. Humphreys' residence, where Mr. Humphreys tendered $6,500 in cash for a prior drug purchase.

At approximately 5:00 p.m., Mr. Noland and Mr. Butt met the defendant at his trailer and the cash sum of $6,500 was paid to him. Mr. Noland then told the defendant that he required three pounds of marijuana and inquired whether he had any marijuana. The defendant replied that he had slightly over three pounds of marijuana which he would provide to them. While Mr. Noland and Mr. Butt remained in the trailer, the defendant exited briefly and returned. When the two men returned to their truck, they observed a brown grocery bag which had been placed in the front seat. This, they explained, was the usual method by which the defendant delivered marijuana to his buyers.

Mr. Butt did not examine the bag or its contents. Mr. Noland did so, but it was disputed whether his examination took place immediately or upon arriving at Mr. Humphreys' house. Within the bag was an unspecified number of plastic bags containing marijuana. The two men traveled directly to Mr. Humphreys' residence where the marijuana was removed, weighed, and repackaged. It was then hand delivered to Mr. Humphreys.

Mr. Gordon and Mr. Humphreys testified generally about their involvement in the drug transaction and identified the grocery bag and marijuana. Trooper Howell described his seizure of the marijuana from Mr. Humphreys and Mr. Gordon and identified his mark and initials on the State's exhibits. The balance of the chain of custody was provided by the testimony of a field officer and a police chemist.

## II.

The defendant initially challenges the testimony of Mr. Gordon and Mr. Hum-

phreys as improper evidence of collateral crimes. It is argued that the witnesses' revelations about their dealings with the three pounds of marijuana, which did not directly involve the defendant, were highly prejudicial.

██ Evidence that the defendant has committed other crimes or wrongs is generally inadmissible for the purpose of proving that he committed the offense for which he has been charged, as we held in Syllabus Point 11 of *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974):

> "Subject to exceptions, it is a well-established common-law rule that in a criminal prosecution, proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged, unless such other offenses are an element of or are legally connected with the offense for which the accused is on trial."

This rule is subject to several exceptions, including situations involving a "common scheme or plan" in which two or more crimes are interrelated. Syllabus Point 12, *State v. Thomas, supra. See also State v. Frasher*, 164 W.Va. 572, 265 S.E.2d 43 (1980).[1]

██ As the State correctly points out, to the extent that the witnesses' testimony dealt with their own involvement in drug trafficking, the collateral crimes rule is simply inapplicable. We have repeatedly stated that the purpose of the rule is to "preclude the inference that because [the defendant] had committed other crimes previously he was more liable to commit the crime for which he is presently indicted and being tried." *State v. Thomas*, 157 W.Va. at 654, 203 S.E.2d at 455. *See also State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986); *State v. Harris*, 166 W.Va. 72, 272 S.E.2d 471 (1980). Consequently, the rule is not involved where the State seeks to introduce evidence of other crimes committed by *persons other than the defendant*.[2]

██ Though the point is not pressed strenuously, the defendant also appears to contest references by Mr. Humphreys and Mr. Butt to the payment of $6,500 to the defendant for a prior drug transaction. This testimony, it is argued, was improper as implicating the defendant in a prior course of criminal conduct.

*Thomas*'s rule on collateral crimes by the defendant is, of course, applicable to drug cases. We have accordingly held that, as a general rule, evidence of prior unrelated drug transactions is inadmissible in a trial upon another drug charge. *See, e.g., State v. Thompson*, 176 W.Va. 300, 342 S.E.2d 268 (1986); *State v. Ruddle*, 170 W.Va. 669, 295 S.E.2d 909 (1982); *State v. Rector*, 167 W.Va. 748, 280 S.E.2d 597 (1981).

*Ruddle* is typical. There, a State witness referred in his testimony to a number of sales of marijuana by the defendant which had occurred over a twelve-month period before the sale for which he had been charged. We reversed the conviction on the authority of *Thomas*, holding that the evidence was not "necessary or relevant" to any legitimate issues raised in the trial. 170 W.Va. at 671, 295 S.E.2d at 911.

Unlike *Ruddle*, the payment of money to the defendant here involved was intimately connected with the delivery of drugs, which provided the basis for the charge against him. Much like the bad checks in *Frasher*,

---

1. This case was tried prior to the adoption of the West Virginia Rules of Evidence in December, 1984. The admissibility of collateral crimes evidence would now be analyzed under Rule 404(b) which deals with "[e]vidence of other crimes, wrongs or acts."

2. A somewhat analogous situation was addressed in *State v. Harshbarger*, 170 W.Va. 401, 294 S.E.2d 254 (1982). There, testimony by an undercover police officer that he had previously purchased marijuana from the defendant's mother was challenged as evidence of a collateral crime. The court rejected the defendant's argument that evidence of the mother's criminal activities served in any manner to inculpate him.

The defendant here does not attack the testimony of Mr. Gordon or Mr. Humphreys on the ground of relevancy.

which came into an embezzlement case, the payment was "an essential link in the State's ... case." 164 W.Va. at 585, 268 S.E.2d at 51. The delivery of the marijuana and the receipt of the cash payment by the defendant constituted a single, unitary transaction. As we noted in *State v. Spicer,* 162 W.Va. 127, 245 S.E.2d 922 (1978), testimony regarding the payment was proper "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." 162 W.Va. at 131 n. 2, 245 S.E.2d at 925 n. 2 (*quoting* McCormick, Handbook on the Law of Evidence 448 (2d ed. 1972)). We find no error in its admission.

### III.

■ A second evidentiary error raised by the defendant relates to the admission of the marijuana and grocery bag. The defendant argues that the State did not satisfactorily prove the chain of custody of the bag of marijuana so as to negate the possibility of intermeddling prior to its seizure.

We observe at the outset that the defendant's argument is unusual, as challenges to the chain of custody typically relate to the handling of evidence after its seizure. Here, the defendant argues essentially that the State has not adequately traced the path of the marijuana through the hands of various distributors, including himself, before it was seized by Trooper Howell. We are not cited and have found only a few cases where a preseizure chain of custody question arose. In both *State v. Huber,* 504 So.2d 644 (La.App.1987), and *Bennett v. State,* 570 P.2d 345 (Okla.Crim.1977), the courts did not distinguish between pre- and post-seizure situations, and appeared to apply their general chain of custody rule to a preseizure challenge.

The Montana Supreme Court gave this explanation of the problem in *State v. Walton,* 722 P.2d 1145, 1147 (Mont.1986):

"Walton misinterprets the chain of custody rule, which does not require the police or prosecutors to account for the possession of evidence before it comes into their hands. A continuous chain of possession must be established after acquisition of the evidence, not before. *State v. Thomas* (1975), 166 Mont. 265, 532 P.2d 405. If the defendant claims the evidence was tampered with before the prosecution acquired it, he has the burden 'to show affirmatively that tampering had taken place.' *Thomas,* 166 Mont. at 268, 532 P.2d at 407.

It is not necessary for the State to prove it would be impossible to tamper with the exhibits. [Cites omitted.] Rather the State need only make a prima facie showing that there had been no substantial change in the evidence. *State v. Wong-Fong,* (1925) 75 Mont. 81, 87, 241 P. 1072, 1074."

■ Our general rule with regard to the chain of custody of physical evidence is set out in Syllabus Point 1 of *State v. Davis,* 164 W.Va. 783, 266 S.E.2d 909 (1980):

"Before a physical object connected with a crime may properly be admitted into evidence, it must be shown that the object is in substantially the same condition as when the crime was committed. Factors to be considered in making this determination are: (1) the nature of the article, (2) the circumstances surrounding its preservation and custody, and (3) the likelihood of intermeddlers tampering with it."

*See also* Syllabus Point 1, *State v. Rector, supra; see generally* F. Cleckley, Handbook on Evidence for West Virginia Lawyers § 10.2(c) (2d ed. 1986).

We need not, for purposes of this case, determine whether a preseizure chain of custody may be proved by a standard less stringent than that established in *Davis.* These situations are rather unique and would appear to be most applicable to drug cases. Even if there had been a reduction in the amount of marijuana, between delivery and seizure, so long as custody of the remaining amount was traceable to the defendant it would be sufficient to sustain a conviction for delivery.

Here, the evidence adduced at trial was sufficient even under the *Davis* standard. It showed that upon returning to his truck,

Mr. Noland observed a brown grocery bag which had been placed there while he was inside the defendant's trailer. He testified that it contained a number of small plastic packages of marijuana. Mr. Butt corroborated his testimony and added that the two men had no other bags of marijuana in their possession on the day in question. Mr. Noland and Mr. Butt traveled immediately to the residence of Mr. Humphreys, where the bag was promptly delivered to him. Mr. Humphreys testified that he examined the bag and its contents, weighed the marijuana, and returned it to the bag. He, in turn, delivered it to Mr. Gordon. Mr. Gordon completed the chain by acknowledging that he had received the bag from Mr. Humphreys immediately prior to its seizure.

We have held that it is unnecessary that every possibility of intermeddling be excluded, but only "that the trial judge, in his discretion, be satisfied that the evidence presented is genuine and, in reasonable probability, has not been tampered with." State v. Davis, 164 W.Va. at 786–87, 266 S.E.2d at 912. Testimonial evidence presented by the State provided an unbroken chain of possession and custody from the time of the defendant's delivery of the marijuana at about 5:00 p.m. until its seizure at about 7:30 p.m. The defendant's argument is, therefore, without merit.

### IV.

The defendant's remaining assignments of error do not warrant extended discussion. First, he contends that he was denied effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Article III, Section 14 of the West Virginia Constitution. At trial, the defendant relied upon an alibi defense and denied delivering marijuana or accepting the $6,500 cash payment on March 16, 1983. It was his testimony that he was studying in the library at Bluefield State College until 5:00 or 5:30 p.m. He did not offer any alibi witnesses.

The defendant, through new counsel on appeal, alleges that his trial attorney did not adequately investigate the case so as to

buttress his alibi defense. He has provided to this Court affidavits by his tutor and a school employee which would place him in the library at 3:30 p.m. on the day in question. These affidavits also generally corroborate his habit of leaving the school at approximately 4:30 p.m. every day. However, neither of the affidavits covers the critical time period when the defendant allegedly engaged in the marijuana delivery which was shortly after 5:00 p.m.

The defendant has also attached affidavits by six persons who state that before trial they had heard both Mr. Butt and Mr. Noland deny having received any marijuana from the defendant. One of the affidavits is by the defendant's mother, Thelma Chamberlain; another is by Linda Wood, who indicates that she is the defendant's fiancee. The others are by friends of the defendant. The affidavits state that Mr. Butt and Mr. Noland claimed prior to trial that they were coerced by the police into signing statements indicating they had obtained marijuana from the defendant.

It appears from the affidavits of the defendant's mother and fiancee that the defendant's trial counsel was aware of their testimony, but elected not to call them. He did cross-examine Mr. Noland about his alleged coerced statement, but Mr. Noland denied any coercion. The defendant also testified at some length on this issue, as he had met with both Mr. Noland and Mr. Butt before trial. It may well be that in view of this and the testimony of Mr. Humphreys, the State's witness, tying Mr. Noland and Mr. Butt to the transaction, defense counsel elected not to bring on the witnesses who had provided the affidavits. Their close relationship to the defendant, as well as the general nature of their testimony on the "recantation" of the confessions by Mr. Noland and Mr. Butt, might be deemed of little value.

■■■ Our basic rules relating to ineffective assistance of trial counsel are traceable to Syllabus Points 19 and 21 of State v. Thomas, supra:

"19. In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of

Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error.

"21. Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused."

*See also State v. Jenkins,* 176 W.Va. 652, 346 S.E.2d 802 (1986); *State ex rel. Levitt v. Bordenkircher,* 176 W.Va. 162, 342 S.E.2d 127 (1986); *Tucker v. Holland,* 174 W.Va. 409, 327 S.E.2d 388 (1985); *State v. Cecil,* 173 W.Va. 27, 311 S.E.2d 144 (1983) (citing cases).

██ From the trial record, we find that defense counsel appeared to be prepared. He conducted a thorough voir dire of the jurors, made appropriate objections during trial, conducted suitable cross-examination, submitted relevant instructions, and made a competent closing argument.

We cannot conclude, based upon the record, that the defendant's legal representation was constitutionally infirm. We are particularly hesitant to so hold based upon largely inconclusive and ex parte affidavits. The allegations of inadequacy of investigation and improper trial strategy are, we believe, better addressed in a habeas corpus proceeding where a court would have the benefit of an evidentiary hearing. *See, e.g., Walker v. Mitchell,* 224 Va. 568, 299 S.E.2d 698 (1983).

██ As a final matter, the defendant contends that he was prejudiced by an inability to obtain certain transcripts of proceedings at pre- and post-trial hearings. Our rule on the recordation of criminal proceedings is stated in Syllabus Point 5 of *State v. Bolling,* 162 W.Va. 103, 246 S.E.2d 631 (1978):

"Under the provisions of W.Va.Code, 57–7–1 and –2, all proceedings in the criminal trial are required to be reported; however, the failure to report all of the proceedings may not in all instances constitute reversible error."

We emphasized in *Bolling* that a failure to report part of the proceedings would not, standing alone, require a reversal. Rather, the judgment would remain undisturbed unless the defendant carried the burden of showing "[s]ome identifiable error or prejudice." 162 W.Va. at 115, 246 S.E.2d at 638. Here, no cognizable prejudice has been proved, or even alleged, by the defendant. We accordingly hold that his allegation of prejudice arising from untimely preparation of pre- and post-trial transcripts is without merit.

For the reasons discussed above, the judgment of the Circuit Court of Mercer County is affirmed.

Affirmed.