466 S.E.2d 395

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Michael Ross RICHARDS, Defendant Below, Appellant.**

No. 22724.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 27, 1995.

Decided Dec. 7, 1995.

Scott E. Johnson, Assistant Attorney General, Charleston, for Appellee.

Elizabeth A. Pyles, Pyles & Auvil, Parkersburg, for Appellant.

PER CURIAM:

The defendant in this proceeding, Michael Ross Richards, was convicted of second degree murder by a jury in Ritchie County, West Virginia, and was sentenced to from five to eighteen years in the State penitentiary. On appeal, he claims that the trial court improperly instructed the jury on several aspects of the case and that the court erred in refusing to allow him to be heard when it appeared that a member of the jury had engaged in juror misconduct. He also claims that he was denied effective assistance of counsel. After reviewing the issues presented and the record filed, this Court concludes that the defendant should have been afforded a hearing on the alleged juror misconduct, and the Court reverses and remands on that point. The Court also believes that the other assignments of error are without merit, and the Court affirms the circuit court's rulings on those points.

The defendant, Michael Ross Richards, was indicted for the murder of David Lawrence after he indisputably shot and killed Mr. Lawrence outside the Richards' home sometime after 4:00 a.m. on August 22, 1993. In the defendant's subsequent trial, the defense took the position that the shooting was accidental. The State argued that it was done with malice.

The evidence adduced shows that on the evening of April 21, 1993, the defendant, who was entertaining David Varner, a friend from out of town, began a round of "bar hopping" with Mr. Varner in Ritchie County. At the time the defendant had a pistol in his possession, since he and Mr. Varner had earlier entertained themselves by engaging in target practice.

Sometime around 3:30 a.m. on August 22, 1993, the defendant and Mr. Varner stopped at an establishment called the "Gas 'N Goods". There they initially encountered Brian Lowther, an acquaintance. The defendant spoke to Mr. Lowther and, according to Mr. Lowther, began discussing "just odds and ends and what we had been doing". The defendant also showed Mr. Lowther the gun which he had in his possession. As they were talking, another friend, Andy Cline, who was present with the victim, David Law-

rence, approached. At this time, according to Mr. Cline, the defendant and Mr. Lowther were "discussing something, running around" and "Brian said ... something about going down to the dam and shooting the gun". In describing the defendant's mood, Mr. Cline said "[s]eemed like he was—he wasn't mad or nothing. He looked, like a normal mood." Shortly thereafter, the parties left the Gas 'N Goods, and the defendant dropped Mr. Varner off at the place where he was staying. The defendant returned to his own home.

Shortly after the defendant arrived at his home, the victim and Andy Cline drove up. Mr. Cline got out of the car and began talking with the defendant. Mr. Cline testified "I went up and asked him what he was into and I think maybe he was talking about what he done earlier that day. I can't remember what all was said, just normal conversation." At that time the defendant, who apparently was about to go into his home, had the pistol, in its holster, in his hands. Then, according to Cline, "[h]e said he was going to scare Davey [Lawrence, the victim] and pulled it [the pistol] out of the holster." He then walked over to the car where Lawrence was still sitting and, according to Mr. Cline, opened the door and said to Lawrence, "You're going to take me where I want to go, aren't you, Davey." At that point, the pistol went off.

The defendant, in a statement which he gave after the shooting, indicated that he had seen David Lawrence a couple of times before, but that he had never really associated with him. He did not indicate that he intended to frighten David Lawrence, but he stated that after talking with Cline "I grabbed my gun and I sat down in the front seat of the [Lawrence] car, the gun went off."

On the basis of this evidence, the jury found the defendant guilty of second degree murder.

In the present appeal, the defendant's first assertion is that the trial court erroneously instructed the jury at three points.

First, he says that the court erroneously stated that:

In a homicide trial malice and intent may be inferred by the jury from the defen-

dant's use of a deadly weapon, if the evidence does not show that the defendant had an excuse, justification or provocation for his conduct. It is the evidence of excuse, justification or provocation, which, if believed by the jury, will reduce the homicide to something less than murder.

He argues that this instruction, in effect, relieved the State of the burden of proving intent and malice unless he showed excuse, justification, or provocation and that the trial court, by giving this instruction, improperly shifted the burden of proof to him.

The defendant also complains that the court improperly instructed the jury that:

... [I]f at the time of the shooting of David Lawrence, the jury determines that the defendant, Michael Ross Richards, had no specific intent to kill David Lawrence, but rather only wanted to frighten him, not intending to kill him, then you may not find Michael Ross Richards guilty of first degree murder.

He argues that by giving this instruction the court, in effect, directed a verdict on the fact that David Lawrence was shot and that he, the defendant, was the individual who shot Lawrence.

Lastly, the defendant claims that the court erred by saying:

The Court instructs the jury that if the jury believes from the evidence herein that Michael Ross Richards embarked on an unlawful course of conduct designed and intended by him to frighten David Lawrence, but not to kill him, and that during the course of that conduct, without malice on the part of the said defendant, the said David Lawrence was killed, then your verdict shall be of no higher grade than voluntary manslaughter.

The Court notes that although the defendant complains about the fact that these instructions were given, his attorney indicated that he did not when pointedly asked by the court during trial if he had any problems with the instructions.

As a general rule, this Court has refused to consider instructional error on appeal unless an objection was made at trial. As stated in syllabus point 6 of *State v. Davis*, 153 W.Va. 742, 172 S.E.2d 569 (1970):

As a general rule, no party may assign as error the giving of an instruction unless he objects thereto before the arguments to the jury are begun, stating distinctly as to the instruction the matter to which he objects and the grounds of his objections; and ordinarily only grounds thus assigned in the trial court will be considered on appeal of the case to this Court.

▇ In spite of this, the Court has recognized that grave instructional error may be considered even in the absence of an objection if the giving of the instruction constitutes plain error and if the substantial rights of the defendant are affected, or the truth finding process is substantially impaired, or a miscarriage of justice would otherwise result. *See State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988); *State v. Fisher*, 179 W.Va. 516, 370 S.E.2d 480 (1988); and *State v. Schofield*, 175 W.Va. 99, 331 S.E.2d 829 (1985). The rule has been summarized in syllabus point 4 of *State v. England, supra*, as follows:

The plain error doctrine contained in Rule 30 and Rule 52(b) of the West Virginia Rules of Criminal Procedure is identical. It enables this Court to take notice of error, including instructional error occurring during the proceedings, even though such error was not brought to the attention of the trial court. However, the doctrine is to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result.

More recently, in syllabus point 7 of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), the Court indicated that:

To trigger the application of the "plain error" doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceeding.

The Court notes that in the case presently under review, the trial court, in addition to giving the instructions of which the defen-

dant complains, explicitly instructed the jury that:

> [A] defendant is never to be convicted on conjecture or suspicion, no matter how grave or strong. The burden always is upon the State of West Virginia to prove guilt, that is, to prove each material allegation in the indictment, and each element of the crime charged, beyond a reasonable doubt. The burden never shifts to a Defendant. . . .

The trial court also instructed the jury on each of the verdicts possible under the indictment and stated with specificity what burden the State was required to meet before such a verdict could be returned. For instance, with regard to first degree murder the court stated:

> The state of West Virginia must overcome the presumption that he [the defendant] is innocent and prove to the satisfaction of the jury beyond a reasonable doubt that: One, the defendant, Michael Ross Richards; Two, in Ritchie County, West Virginia; Three, on or about the 22nd day of August, 1993; Four, did kill David Lawrence; Five, unlawfully; Six, willfully; Seven, intentionally; Eight, maliciously; Nine, deliberately; Ten, and premeditatedly.

The trial court also said:

> If the jury and each member of the jury has a reasonable doubt of the truth of the charge as to any one or more of the elements of murder in the first degree, you shall not find Michael Ross richards [sic] guilty of murder in the first degree.

Similarly, the trial court specified what the State had to prove before the defendant could be convicted of second degree murder:

> Before the defendant, Michael Ross Richards, can be convicted of murder in the second degree, the state of West Virginia must overcome the presumption that he is innocent and prove to the satisfaction of the jury beyond a reasonable doubt that: One, the defendant Michael Ross Richards; Two, in Ritchie County, West Virginia; Three, on or about the 22 day of August, 1993; Four, unlawfully and; Five, mali-

ciously, but without deliberation or premeditation; Six, killed David Lawrence.

The court also told the jury:

> If the jury and each member of the jury has a reasonable doubt of the truth of the charge as to any one or more of the elements of murder in the second degree, you shall not find Michael Ross Richards guilty of murder in the second degree.

■ After reviewing the overall charge in this case, the Court believes that although the instructions about which the defendant complains, when taken out of the overall context of the charge, do appear to relieve the State of parts of its burden of proof, the trial court elsewhere clearly and correctly stated the State's burden of proof and identified each element that the State had to prove beyond a reasonable doubt before the jury could find the defendant guilty.

■ This Court believes that the trial court's overall charge properly identified the State's burden and that any isolated error in the charge was not so substantially great as to affect seriously the fairness, integrity, or public reputation of the judicial proceeding and that it consequently was not plain error under the rule set forth in *State v. Miller*, *supra*. In a situation such as this, the appropriate inquiry is whether an instructional error or apparent instructional error was remedied by other instructions given in the case. *See State v. England, supra; State v. Pannell*, 175 W.Va. 35, 330 S.E.2d 844 (1985); *State v. Vance*, 168 W.Va. 666, 285 S.E.2d 437 (1981). Even though the first language complained of by the defendant suggested that the defendant had to show excuse, justification, or provocation to eliminate the inference of malice and intent, the court elsewhere very specifically stated that the State had the burden of showing malice and intent beyond a reasonable doubt. Similarly, while the trial court seemingly stated that the defendant shot the victim, the court elsewhere stated that the State had to prove that fact beyond a reasonable doubt. Additionally, with regard to the question of whether the defendant shot the victim, all the evidence adduced, including the defendant's own statement, showed that the defendant had, in fact, shot the victim. In view of this, even if the

trial court had not given the additional instruction on the State's burden of proof, this Court could not consider the court's statement that the defendant shot the victim plain error.

The defendant's second principal assignment of error is that the trial court erred in refusing to allow him to be heard on the issue of juror misconduct.

In a presentencing motion and during the sentencing hearing, counsel for the defendant alleged that a juror had improperly conducted independent research by seeking a definition of "malice" in a dictionary during jury deliberations.

▇▇▇ In *State v. Scotchel*, 168 W.Va. 545, 285 S.E.2d 384 (1981), this Court indicated that ordinarily a jury's verdict may not be impeached based upon matters that occur during the jury's deliberative process if the matters relate to the manner or means that the jury uses to arrive at its verdict. The Court stated in syllabus point 1:

> A jury verdict may not ordinarily be impeached based on matters that occur during the jury's deliberative process which matters relate to the manner or means the jury uses to arrive at its verdict.

On the other hand, in syllabus point 2 of the same case, the Court stated:

> Courts recognize that a jury verdict may be impeached for matters of misconduct extrinsic to the jury's deliberative process.

In distinguishing between the matters which may serve as a basis for impeachment of a jury's verdict from those which may not, 2 F. Cleckley *Handbook on West Virginia Criminal Procedure* (1993), at page II–273, states:

> A distinction exists between matters which inhere in the verdict and those which do not. Although a juror cannot testify to matters contained in his personal consciousness (motive) which are not accessible to other testimony, he is competent to be heard as to the existence of overt acts or improper influences (irregularity). Courts recognize that a jury verdict may be impeached for matters of misconduct extrinsic to the jury's deliberative process. *State v. Scotchel, supra.* Jurors are com-

petent to testify to the facts and circumstances surrounding such misconduct, but they may not testify to what motivated or actuated the misconduct. *Haight v. Goin,* [176 W.Va. 562], 346 S.E.2d 353 (W.Va. 1986). In *State v. Daniels,* [*Daniel*], 182 W.Va. 643, 391 S.E.2d 90 (1990) and in *State v. Strauss* [187 W.Va. 84], 415 S.E.2d 888 (W.Va.1992), the court permitted the use of a juror's testimony in an attempt to impeach the jury's verdict. In both of these situations, however, extraneous prejudicial information was received.

In a number of circumstances, courts have considered a juror's reference to matter other than that which may properly be taken into the jury room to be highly irregular. For instance, in *Mattox v. United States,* 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892), the court held that it was prejudicial for a juror to refer to a newspaper article in the jury room. Likewise, in *State v. Rice,* 83 W.Va. 409, 98 S.E. 432 (1919), the Court considered it improper for a juror to consider a statement by a witness inconsistent with the witness' testimony at a later trial. Similarly, in *In re Beverly Hills Fire Litigation,* 695 F.2d 207 (6th Cir.1982), the court found that it was improper for a jury to consider the results of an extrajudicial experiment conducted by a fellow juror.

In *United State v. Duncan,* 598 F.2d 839 (4th Cir.1979), the United States Circuit Court for the Fourth Circuit addressed the question of whether a juror's reference to a dictionary for the definitions of "motive" and "intent" constituted prejudicial error. The court concluded that the reference to a dictionary was misconduct, although it was not prejudicial *per se.* In reaching that conclusion, the court referred to *Rodriguez y Paz v. United States,* 473 F.2d 662 (5th Cir.1973); *United States v. Siragusa,* 450 F.2d 592 (2nd Cir.1971); *Faith v. Neely,* 41 F.R.D. 361 (N.D.W.Va.1966); and *Frazier v. Beard,* 201 F.Supp. 395 (W.D.Va.1962).

In the *Duncan* case, there was evidence that as soon as a member of the jury mentioned the reference to the dictionary, the foreman of the jury immediately squelched all discussion of the point. The court con-

cluded that the squelching of the discussion of the dictionary definition, as well as the fact that the problems relating to it were not promptly raised before the trial court, justified the conclusion that, in addition to not being prejudicial *per se*, the incident was not prejudicial *in actione*.

■ Consistent with the holding in the *Duncan* case, we believe that reference to a dictionary by a juror during deliberations or during the trial of a case is misconduct. Further, the cases cited, including *State v. Scotchel, supra*, especially, suggest that it might be the type of conduct by which a jury's verdict might be impeached and which might be prejudicial.

■ In the present case, unlike in the case of *United States v. Duncan, supra*, it is not clear whether the juror in question, or the jury as a whole, relied on the dictionary definition of malice in determining the defendant's guilt. It is not even clear whether the inquiring juror communicated that dictionary definition to the other members of the jury in any way. Under these circumstances, and given the importance of affording the defendant a fair trial, and given especially the fact that the juror referred to the definition of malice, about which there was some small confusion in court's charge, this Court believes that it was incumbent upon the trial court in the present case to conduct a hearing to determine what effect, if any, the juror's misconduct by way of referring to the dictionary, had upon the jury's verdict in this case.

Having reached this conclusion and having determined that the trial court did not conduct the appropriate hearing, we believe that this case must be remanded with directions that the circuit court conduct an appropriate hearing on the alleged juror misconduct. The trial court must set aside the jury's verdict if it appears that such misconduct was present and if it further appears that the misconduct prejudiced the jury's verdict.

In addition to the foregoing issues, the defendant also claims that he did not receive effective assistance of counsel.

This Court notes that it has repeatedly held that an ineffective assistance claim can-

not be asserted on appeal if the record provided on appeal proves to be so deficient as to preclude the Court from reaching reasoned determination on the merits of the ineffective assistance of counsel claim. As stated in *State v. Miller, supra*, 194 W.Va. at 15, 459 S.E.2d at 126:

In this vein, we have held with a regularity bordering on monotonous that if the record provided to us on direct appeal proves to be so deficient as to preclude us from reaching a reasoned determination on the merits of the ineffective assistance claim, it is the defendant who must bear the brunt of an insufficient record on appeal. *See State v. Kilmer*, 190 W.Va. 617, 631, 439 S.E.2d 881, 895 (1993); *State v. Whitt*, 184 W.Va. 340, 346, 400 S.E.2d 584, 590 (1990); *State v. Wickline*, 184 W.Va. 12, 17–20, 399 S.E.2d 42, 47–50 (1990); *State v. Tesack*, 181 W.Va. 422, 428, 383 S.E.2d 54, 60 (1989); *State v. Chamberlain*, 178 W.Va. 420, 427, 359 S.E.2d 858, 865 (1987). *See also State v. England*, 178 W.Va. 648, 363 S.E.2d 725 (1987). The very nature of an ineffective assistance of counsel claim demonstrates the inappropriateness of review on direct appeal. To the extent that a defendant relies on strategic and judgment calls of his or her trial counsel to prove an ineffective assistance claim, the defendant is at a decided disadvantage. Lacking an adequate record, an appellate court simply is unable to determine the egregiousness of many of the claimed deficiencies. Such a situation exists here.

■ In the present case, the majority of the points that the defendant asserts which rise to the level of ineffective assistance of counsel would require information outside the record for resolution. For instance, the defendant claims that defense counsel should have moved for a change of venue because forty-five percent of the jury panel was dismissed. The key issue in a venue determination is whether the defendant did have an impartial jury trial, not whether a number of veniremen were dismissed. *State v. Settee*, 161 W.Va. 384, 242 S.E.2d 464 (1978). In the present case, the record as developed simply fails to show that the jury was not impartial. The defendant

also claims that his counsel was ineffective in failing to call him as a witness. Rather clearly, the decision to call a defendant to the stand is often a tactical decision. *See, e.g., United States v. Teague,* 953 F.2d 1525 (11th Cir.1992). Without information extrinsic to the present record, the Court cannot determine whether counsel's decision not to call the defendant was a tactical one or a matter rising to the level of ineffective assistance. The Court also notes that the defendant claims that his counsel was ineffective in that he did not move for dismissal of the indictment based on the evidence available to the grand jury. The defendant claims that the indictment was based on the demonstrably false testimony of a police officer. However, the Court cannot determine that the evidence was demonstrably false from the record presently before it. All these circumstances indicate that under the rule in *State v. Miller, supra,* treatment of the defendant's ineffective assistance claim would be inappropriate in this appeal.

Lastly, it appears that the defendant is claiming that his attorney failed to render effective assistance of counsel when he failed to object to certain remarks made by the prosecutor during closing argument. There might have been tactical reasons for counsel not objecting. Again, we cannot conclude from the record presented that such was or was not the case or that counsel's assistance was ineffective.

For the reasons stated, this case is remanded to the Circuit Court of Ritchie County for a hearing on the question of whether one of the petit jurors actually referred to a dictionary to ascertain the definition of malice during the trial of this case. If the court finds that the facts do support such a finding, the court is directed to determine whether that reference in any way affected the jury's verdict or prejudiced the defendant's trial.

In the event the court finds that the juror did refer to the dictionary for the definition and that the jury's verdict was affected or the defendant's trial was prejudiced by the juror's reference, the trial court is directed to set aside the defendant's conviction and to award him a new trial. In the event the trial court determines that no reference to a dic-

tionary occurred or that the reference did not affect the jury's verdict or prejudice the defendant's trial, the defendant's conviction shall stand, and the trial court should make appropriate disposition of the defendant in accordance with the conviction.

Affirmed in part; reversed in part; and remanded with directions.