STATE OF WEST VIRGINIA *v.* L. E. JOHNSON

(No. 7089)

Submitted January 19, 1932.    Decided January 26, 1932.

654

*L. R. Via* and *W. T. Lovins,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

Woods, Judge:

L. E. Johnson prosecutes error from an order of the circuit court of Cabell county refusing a writ of error to a judgment, entered by the court of common pleas of said county, sentencing him to two years confinement in the penitentiary.

Defendant was tried on the first and third counts of the indictment, the second count having been quashed by a former order. The first count charged him with feloniously breaking and entering a certain building belonging to John Walters and Mrs. John Walters, and used as a theatre building, said building not then and there being a dwelling house or outhouse adjoining thereto or occupied therewith, and of stealing and carrying away one lot of motion picture machinery and equipment of the value of $1,000.00, the goods, chattels and property of the said John Walters and Mrs. John Walters. The third, charged the larceny of "one lot of motion picture machinery and equipment" belonging to the parties aforesaid.

Did the trial court err in overruling the demurrer to the first and third counts? While defendant's contention that the description of the property alleged to have been removed was insufficient might be well taken, we are of opinion that the first count is good in any event, under section 13, chapter 145, Code 1923, for feloniously breaking and entering a building other than a dwelling. *State* v. *Cooper*, 111 W. Va. 255, 161 S. E. 30; *State* v. *Mullett*, 94 W. Va. 680, 120 S. E. 75; *State* v. *McClung*, 35 W. Va. 280, 13 S. E. 654. As pointed out in the *Cooper* and *McClung* cases, the allegation in said count of actual larceny not being necessary, but merely in aid of intent, need not be made with the same formality as a count for larceny itself.

Defendant seeks to avoid the conviction by claiming a variance, pointing out that, while the first count alleges the ownership of the building to be in Walters and wife, the proof shows that it was owned in fact by one Edwards. The evidence, however, reveals the fact that the theater was under lease to Walters and wife. This is sufficient under our case of *State* v. *Williams*, 40 W. Va. 268, 21 S. E. 721. In that

case the court instructed the jury that it would be sufficient if the house mentioned in the indictment was in the actual or constructive possession of persons named therein. But it is not necessary to go to this extent in the instant case, for what was claimed to be a variance was not taken advantage of before verdict by motion to exclude, nor objected to when offered, and no motion thereafter made to strike it out. *State* v. *Rodgers,* 80 W. Va. 680, 93 S. E. 757. The established rule in the Virginias is that the objection must be made in one of the above ways before verdict.

It is further urged that while the indictment is for feloniously breaking and entering a building—used as a theater building—not a dwelling house or an outhouse adjoining thereto, that the proof shows that there were people living in that building as a residence, thus changing the entire character of the building from that named in the first count of the indictment. This motion of variance was seasonably made.

As already stated, count one of the indictment is based solely on section 13, chapter 145, Code 1923. The proof puts it plainly within such section. While there is a statement, on cross-examination, that someone occupies a portion of the building over the theater as a dwelling, there is nothing to show a physical connection with, or right of access to, the theatre which is charged to have been broken into. The building—that portion at least which was under lease as a theater—has been so specifically described that the defendant is protected from a second prosecution for the same offense, should someone attempt to have him indicted for breaking and entering a dwelling for the same offense.

It is the well established general rule that to make a variance between allegations in an indictment or information and the proof fatal, it must be material and prejudicial. 14 R. C. L. 206. The error, if it can be classed as an error, was in favor of the defendant, since he was arranged for a less offense, and of such a nature as to bar further arraignment for the greater offense. May the defendant be allowed to urge such ground? We think not.

Was the first count sustained by the general verdict of guilty? The rule is stated in 14 R. C. L. 211: "If two

counts in an indictment or information relate to one and the same transaction, general verdict is sufficient, and may be applied to either count, *so that upon an indictment containing several counts, some of which are good and others faulty, such a verdict will be referred to the good counts and sustained unless the contrary appears."* The above text is supported by *Powers* v. *United States,* 223 U. S. 303; *State* v. *Stebbins,* 29 Conn. 463, 79 Am. Dec. 223; *People* v. *Donaldson,* 255 Ill. 19, 99 N. E. 62; *State* v. *Robbins,* 123 N. C. 730, 31 S. E. 669; *Manning* v. *State,* 46 Tex. Crim. 326, 81 S. W. 957; *State* v. *Downer,* 8 Vt. 424, 30 Am. Dec. 482; *State* v. *Kube,* 20 Wis. 217, 91 Am. Dec. 390. In fact, our statute (section 23, chapter 159, Code 1923) plainly directs such action. Also see *State* v. *Cooper, supra.* In the latter case, there was a general demurrer, while in the case now under consideration there was a demurrer to each count. According to *Powers* v. *United States, supra,* the principle is the same in either instance.

In view of the foregoing, the sufficiency of the third count becomes immaterial. While the moving picture industry is a development of recent years, what would be a sufficient description is a matter hard to determine. Prosecuting officers are admonished by this Court, through Judge Maxwell, in *State* v. *Robinson,* 109 W. Va. 561, 155 S. E. 649, of the necessity of careful pleading and that from time immemorial there must necessarily be a high degree of completeness and precision in a description of the property taken in a charge of larceny.

According to the evidence for the state as testified to by at least four witnesses, the lock on the back door of the theater was sawed, or cut, in some way. This would establish the breaking and entering, although the defendant's co-indictee, W. N. McVey, testified that the door was standing wide open. Divers persons testified to the theft of the theater equipment and to its finding in places designated by McVey. While the latter made two affidavits diverse on the question of whether the defendant Johnson was present and aided and abetted him in the theft of the property, he went upon the stand at the trial and testified that Johnson assisted him in the tak-

ing down of the equipment and the removal thereof from the building. McVey's wife likewise testified that defendant Johnson admitted to her that he assisted her husband in the theft. Other evidence incriminating him was offered to the jury. Admitting the admissibility of such evidence to have been proper, the court would have been warranted in sentencing the prisoner under the first count in the indictment charging a breaking and entering of the theater with intention to feloniously steal the theater equipment mentioned, under the authorities heretofore cited.

We must now look to the admissibility of the evidence challenged by defendant.

It is contended that the evidence as to the comparison of photographs of the finger print found on a part of the equipment with those of the imprint of defendant's right index finger was improperly admitted. Before testifying to his opinion as to the identity of the defendant's finger print, the witness claims fully his qualification, specified the circumstances upon which he predicated his opinion, and swore that he was able to express an opinion with reasonable certainty. He was skillfully cross-examined as to every detail of his testimony. Ample basis was afforded for the jury to come to an intelligent conclusion as to the correctness of his opinion. It is earnectly insisted, however, that this class of testimony is not admissible under the common law rules of evidence, and as there is no statute in this state authorizing it, the court should have refused its introduction. The case is one of first impression in the courts of this state, and is a novel one, although students of the science claim that the use of finger prints as a means of identification is one of very ancient origin, having been used in Egypt when the impression of the monarch's thumb was used as his sign manual. This class of evidence is admitted in Great Britain, it being held in 1909 by the Lord Chief Justice of England that the court may accept the evidence of finger prints, though it be the sole ground of identification. *Castleton's Case,* 3 Crim. App. C. 74. In *People* v. *Jennings,* 252 Ill. 534, 96 N. E. 1077, 1082, in holding such evidence admissible the court stated that "there is a scientific basis for the system of finger print

identification, and that the courts are justified in admitting this class of evidence; that this method of identification is in such general and common use that the courts cannot refuse to take judicial cognizance of it." And in *People* v. *Roach*, 215 N. Y. 592, 109 N. E. 618, 623, Mr. Justice Seabury said: "In view of the progress that has been made by scientific students and those charged with the detection of crime in the police departments of the larger cities of the world, in effecting identification by means of finger print impression, we cannot rule as a matter of law that such evidence is incompetent. Nor does the fact that it presents to the court novel questions preclude its admission upon common law principles. The same thing was true of typewriting, photography, and X-ray photographs, and yet the reception of such evidence is a common occurrence in our courts." The authorities show that when photography was first introduced, it was seriously questioned whether pictures thus created could properly be introduced in evidence, but this method of proof, as well as by means of X-rays and the microscope, is now admitted without question. 2 Wharton, Crim. Ev. (10th ed.), sec. 544; 2 Wigmore on Ev. (2nd ed.), sec. 795; Rogers on Expert Testimony (2nd ed.), sec. 140; Jones on Evidence (3rd ed.), sec. 581. The question of the qualification of the witness concerning the finger prints is the same as that of all experts largely in the discretion of the trial court. There can be no arbitrary or fixed test but necessarily only a relative one, dependent somewhat on the subject and the particular witness. 4 Wigmore on Ev. (2nd ed.), sec. 1923, and cases cited. The fact that error may sometimes result in effecting identification by this means affords no reason for the exclusion of such evidence. Mistakes may also occur in effecting identification by personal appearance, casual meeting, by handwriting, or by one's voice heard in the dark or over the telephone, but evidence of this character is admissible and its weight is to be determined by the jury. Courts often allow proof of circumstances apparently very trivial as evidence upon which identification may be effected.

The chief objection made to this class of evidence was that it was a violation of the spirit and purpose of our constitutional inhibitions. This precise question has been raised in other jurisdictions. In *People* v. *Sallow,* 165 N. Y. S. 915, 100 Misc. Rep. 447, the court classed the evidence along with other evidence for the purpose of identification of the defendant as to personal appearance, hair, eyes, complexion, marks, scars, teeth, hands, and the like, holding that finger prints are but the tracings of physical characteristics or lines upon the fingers. It was further observed in that case that, while the witness does not testify, the physical facts speak for themselves, and that there is no danger of error being committed, specifically holding that the taking of finger prints is not a violation of the spirit or purpose of the constitution inhibition. Our nearest approach to the question at issue is found in *State* v. *Coleman,* 96 W. Va. 544, 123 S. E. 580. In that case the defense of mental irresponsibility was raised and evidence of facts disclosed by physical and mental examination of accused by physicians either prior to or during the trial was offered. This Court held that such testimony by physicians from such examination made of the defendant, with or without his consent, is not a violation of the constitutional privilege of accused not to be a witness against himself. The testimony offered in the instant case was secured by the witness requiring the prisoner to place his right index finger upon an inking device and then making an impression on another surface. No objection was made by the prisoner to this requirement. In the *Coleman* case, the defendant was handcuffed and taken into office of the physician and without notice to his attorney, and without defendant's consent, an X-ray examination was made. So we conclude that the defendant may not object, under the circumstances here, to the introduction of a photograph of his finger print on the ground that the same contravened his constitutional privilege not to be a witness against himself. *Moon* v. *State,* 22 Ariz. 418, 16 A. L. R. 362; *McGarry* v. *State,* 82 Tex. Crim. Rep. 597, 200 S. W. 527.

The next point of error stressed relates to alleged misconduct of the jury, in this, that a radio receiving set was

installed in the room where the jury was kept in custody over night by persons not legally in charge of the jury, and that the jury received divers unauthorized communications by means of said receiving set to the prejudice of the defendant. The deputy sheriff having charge of the jury testified that a radio set was installed in the room in which the jury was kept, and that it was operated for about one hour. Because of the fact that they had no aerial the radio did not work satisfactorily. He further said that nothing came in from the Huntington station, and that they only got a Cincinnati station and practically all that came over such radio was music. He was positive that nothing concerning the trial came over the instrument, and that he was present all the time that it was operating. While the defendant offered testimony from a local newspaper of the radio programs on the air for that night, one of which was entitled "Crime Prevention," the testimony of the deputy sheriff prevents us from saying that anything prejudicial to the prisoner came over the radio. We have held that unless it affirmatively appears from the record that there was such abuse of its power as denied the defendant a fair and impartial trial, it will not be reviewed by this Court. *State* v. *Beale,* 104 W. Va. 618, 141 S. E. 7, 401. To the same effect is the case of *State* v. *Driver,* 88 W. Va. 479, 107 S. E. 189. Whether or not a juror has been subjected to improper influence affecting the verdict, is a fact to be determined by the trial judge from the circumstances, which must be clear and convincing to require a new trial, proof of mere opportunity to influence the jury being insufficient. 16 C. J. 1161.

Objection is made to the refusal by the court of several instructions proposed by the defendant. Nineteen instruc tions were asked for, of which six were refused. The state offered no instructions. The instructions given by the court seem to have fully presented every phase of the defendant's case to the jury. The principal complaint is the refusal of instruction No. 12 relating to the testimony of accomplices. While this was refused, it seems that an instruction embodying the law as to the care and caution that the jury should give to the testimony of accomplices, was given in an unnum-

bered instruction fully stating the law on the question. Courts will not be required to repeat instructions. This principle is so well established in our practice as to require no citation of authority to support it. A careful examination of the record reveals no error on this point.

The record, which together with the able argument of counsel for the defendant, has had careful and thorough consideration, and we are not convinced that the defendant was denied a fair trial in the court below.

Finding no error, its judgment is therefore affirmed.

*Affirmed.*