415 S.E.2d 888

**STATE of West Virginia, Appellee,**

v.

**Ricky Joe STRAUSS, aka Ricky Joe Akers, Appellant.**

**No. 20448.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 21, 1992.

Decided March 20, 1992.

---

H.L. Kirkpatrick III, Ashworth & Kirkpatrick, Beckley, for appellant.

Mario J. Palumbo, Atty. Gen., Teresa A. Tarr, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

Ricky Joe Strauss, who is also known as Ricky Joe Akers, appeals a jury verdict in the Circuit Court of Wyoming County, which found him guilty of burglary and grand larceny. Mr. Strauss appeals seeking a new trial because of jury misconduct and contamination. Based on a careful review of the evidence presented, we agree with Mr. Strauss and reverse the order of the circuit court.

After a jury trial on September 5–6, 1989, Mr. Strauss was found guilty of burglary and grand larceny and he was sentenced to one to fifteen years in the penitentiary on the burglary conviction and one to ten years in the penitentiary on the grand larceny conviction, with the terms to run concurrently. At trial, the circuit court dismissed a charge of transfer of stolen goods. Specifically, Mr. Strauss was accused of stealing fifteen guns valued at $7,500 from Melvin Graham's house in Herndon, West Virginia.

After the trial, Hank Fuller, a witness for the State, told Mr. Strauss and his lawyer that he saw another witness for the State talking to a juror in a suspicious manner. Based on this information, Mr. Strauss filed a motion for a new trial alleging jury contamination. After depositions and a hearing, the circuit court denied Mr. Strauss' motion for a new trial and Mr. Strauss appealed to this Court alleging that the jury was improperly influenced.

During pre-trial *voir dire*, prospective jurors were asked if they knew Arthur Altizer, a State's witness. Prospective juror Daniel Sizemore, did not respond affirmatively to the question and he was selected to serve as a juror and foreman. At

trial, Mr. Altizer testified that after he had traded guns with Mr. Fuller (the witness who saw Mr. Altizer talking to Mr. Sizemore), he discovered that the gun he got from Mr. Fuller was one of the guns stolen from Melvin Graham, his uncle.

During a short recess on the first day of trial, Mr. Fuller saw Mr. Sizemore, a juror, talking to Mr. Altizer, a witness. Mr. Fuller reported that Mr. Altizer spoke with his hand up around his face. Although the juror apparently did not know the witness by name, they had recognized and spoken to each other since the 1970's. During the recess, the juror and the witness discovered the other's role in the case and discussed trading guns in general. Mr. Altizer also said that he told the juror that the shotgun he had gotten from Mr. Fuller "was a relative[ly] new gun." Neither reported their acquaintance or conversation to the circuit court and Mr. Sizemore said that the conversation did not influence his guilty vote.

However, during a break in jury deliberations, Mr. Sizemore told the other jurors that he had known the witness, Mr. Altizer, for years and that he would not do anything wrong. Patricia Cook, one of the two jurors deposed, indicated that Mr. Sizemore's statements that Mr. Altizer was a good person resulted in influencing her decision to find the defendant guilty.[1]

After the circuit court denied Mr. Strauss' motion for a new trial, Mr. Strauss appealed to us alleging that the jury was improperly influenced. The only issue on appeal is whether the circuit court erred in not declaring a mistrial because of improper jury influence.

Recently in *State v. Daniel*, 182 W.Va. 643, 391 S.E.2d 90 (1990), we restated our general rule on alleged jury misconduct, which is:

"A motion for a new trial on the ground of the misconduct of a jury is addressed to the sound discretion of the court, which as a rule will not be disturbed on appeal where it appears that defendant was not injured by the misconduct or influence complained of. The question as to whether or not a juror has been subjected to improper influence affecting the verdict is a fact primarily to be determined by the trial judge from the circumstances, which must be clear and convincing to require a new trial; proof of mere opportunity to influence the jury being insufficient." Syllabus Point 7, *State v. Johnson*, 111 W.Va. 653, 164 S.E. 31 (1932).

In *Daniel*, although a witness for the defendant telephoned a juror to "give the juror's son a break on a used car and reminded the juror to do what she could to help" the defendant, we found no prejudicial effect on the jury because "the result that was eventually reached was not that intended by" the telephoning witness. *Daniel supra*, 182 W.Va. at 647–48, 391 S.E.2d at 94–95. *See also State v. Holland*, 178 W.Va. 744, 364 S.E.2d 535 (1987) (finding no prejudice resulted from a short conversation between a state trooper and members of the jury); *Haight v. Goin*, 176 W.Va. 562, 346 S.E.2d 353 (1986) (finding no prejudice resulted because the jury was unaware of the misconduct of one juror).

---

1. The following dialogue took place during the deposition of Ms. Cook:

Q. I guess what I am getting at, did his relationship with Mr. Altizer leave you with some impression that influenced you in some small way in the trial?
A. It could have. I would say it could have.
Q. So you are saying that Mr. Sizemore's contact and personal knowledge of Mr. Altizer did influence your decision?
A. I would say it did.

\* \* \* \* \* \*

Q. Do you believe that Mr. Sizemore's statements were designed to influence the jury in its verdict?

A. I think it could, yes.
Q. Do you think it influenced you in your determination as to the verdict in the case?
A. Yes.
Q. You think it did?
A. Yes.
Q. You think that you found him guilty based upon what Mr. Sizemore told you about Mr. Altizer?
A. I think it had a lot to do with it.

After reviewing the evidence including the deposition of Ms. Cook, a juror, we find that the jury was improperly influenced. Although Mr. Sizemore should have immediately reported to the circuit court his acquaintance and conversation with Mr. Altizer, this fact standing alone would have been insufficient to show improper influence. However, Mr. Sizemore then informed the other members of the jury that Mr. Altizer was a good man and a good friend. One of the jurors said that she was influenced by Mr. Sizemore's vouching for a State's witness, and that "it had a lot to do with" her vote to find the defendant guilty. Given the direct evidence of the jury contamination, we find that the circuit court abused his discretion by refusing to declare a mistrial.

For the above stated reasons, the judgment of the Circuit Court of Wyoming County is reversed and the case is remanded for proceedings consistent with this opinion.

Reversed and remanded.