655 S.E.2d 517

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Danny L. CECIL, Defendant Below, Appellant.**

**No. 33298.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 12, 2007.

Decided Nov. 21, 2007.

James M. Cagle, Mark McMillian, Charleston, for Appellant.

Mark A. Sorsaia, Prosecuting Attorney, Angela M. Hanks, Assistant Prosecuting Attorney, Winfield, for Appellee.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Putnam County entered on April 28, 2006. Pursuant to that order, the appellant and defendant below, Danny Lee Cecil, was sentenced

to a term of one to five years in the penitentiary for his conviction of the felony offense of sexual abuse in the first degree; a concurrent term of ten to twenty years for his conviction of sexual abuse by a custodian; and a consecutive term of ten to twenty years for his second conviction of sexual abuse by a custodian. In this appeal, the appellant presents several assignments of error. First, he contends that the circuit court improperly limited the testimony of one of his witnesses. Secondly, he asserts that the circuit court erred by not granting his motion for judgment of acquittal. Third, the appellant contends that one of the jurors lacked the requisite statutory qualifications to serve on the jury. Fourth, the appellant claims that there was misconduct and bias on the part of certain jury members. Finally, the appellant argues that his sentence is disproportionate in contravention of Article III, Section 5 of the West Virginia Constitution.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. Because we find that there was misconduct on the part of certain jury members, we vacate the appellant's convictions and remand this case for a new trial.

## I.

### FACTS

In November 2005, a Putnam County grand jury returned a four-count indictment against the appellant charging him with one count of sexual abuse in the first degree, one count of sexual assault in the second degree, and two counts of sexual abuse by a custodian. The alleged victims were two young adolescent females, S.D. and K.J.[1]

It was alleged that on or around July 3, 2005, K.J., a thirteen-year-old female who was a friend of the appellant's daughter, spent the night at the appellant's residence. According to K.J., she awoke during the night when she felt a hand on her "bottom." At the time, she was laying on her stomach

and when she turned over, she said she saw the appellant standing over her bed. K.J. testified that the appellant then placed his hands inside her shorts and inserted his finger into her vaginal area while at the same time putting his tongue on her lips. K.J. said that she pretended to be asleep while also rolling over to get away from the appellant. She said that the appellant then left the room. According to K.J., after a short period of time, she went to the adjacent bedroom where the appellant's daughter was sleeping and told her what happened. K J. testified that the appellant's daughter went downstairs and told her mother. K.J. said that the appellant and his wife came upstairs to talk to her about her accusations and then called her mother to come and get her. Thereafter, K.J.'s mother took her to the hospital for a sexual assault exam[2] and later filed a complaint with the police.

As the investigation began concerning K.J.'s allegations, S.D. came forward and alleged that she had been a victim of the appellant in 2002. S.D. testified that in March of 2002, when she was thirteen-years-old, she spent a night at the Cecil residence. S.D. said that she and her family knew the Cecils through church and that she was a friend of the appellant's son. S.D. testified that a sleep over was arranged between her parents and the Cecils and that she slept in a guest bedroom. According to S.D., during the night she was awakened by the appellant who had his hand down her shirt touching her breasts. She testified that the appellant moved his hands down to her pants and that she defended herself from his advances by holding her legs together. The appellant then left the room. S.D. testified that she told her sister and an uncle what happened but did not tell her parents because she did not want to damage their relationship with the appellant or hurt the appellant's children.

A jury was empaneled to hear the appellant's case on January 31, 2006, and trial continued through February 3, 2006. The jury returned its verdicts on February 7,

---

1. We follow our traditional practice in cases involving sensitive facts and use initials to identify the alleged victims rather than their full names. *See In the Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

2. The exam showed no physical evidence that K.J. had been sexually assaulted.

2006.[3] The appellant was found guilty of one count of the felony offense of sexual abuse in the first degree of S.D. The appellant was further found guilty of two counts of the felony offense of sexual abuse by a custodian as related to both S.D. and K.J. The appellant was found not guilty of sexual assault in the second degree of K.J.

Thereafter, the appellant filed several post-trial motions and alleged that there had been misconduct on the part of certain jury members. A hearing was held on March 23, 2006. Subsequently, the circuit court denied the appellant's motions and proceeded with sentencing. This appeal followed.

## II.

## STANDARD OF REVIEW

■ As set forth above the appellant has raised several assignments of error. In Syllabus Point 1 of *State v. Paynter,* 206 W.Va. 521, 526 S.E.2d 43 (1999), this Court held that, " 'Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syllabus point 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995)." This Court has further held that, "A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syllabus Point 4, *State v. Rodoussakis,* 204 W.Va. 58, 511 S.E.2d 469 (1998). Finally, this Court has noted that,

> A motion for a new trial on the ground of the misconduct of a jury is addressed to the sound discretion of the court, which as a rule will not be disturbed on appeal where it appears that defendant was not injured by the misconduct or influence complained of. The question as to whether or not a juror has been subjected to improper influence affecting the verdict, is a fact primarily to be determined by the trial judge from the circumstances, which must be clear and convincing to require a new trial, proof of mere opportunity to influence the jury being insufficient.

Syllabus Point 7, *State v. Johnson,* 111 W.Va. 653, 164 S.E. 31 (1932). With these standards in mind, we now consider the issues presented in this case.

## III.

## DISCUSSION

As set forth above, the appellant has presented several assignments of error which he contends warrant the reversal of his convictions. We will address each of the alleged errors below.

### A. Limitation on Expert Testimony

■ The appellant first contends that the circuit court improperly restricted the testimony of Dr. Christina Cooper–Lehki who testified on his behalf. Dr. Cooper–Lehki is a faculty psychiatrist and assistant professor at West Virginia University ("WVU"). Dr. Cooper–Lehki also does forensic evaluations. At trial, Dr. Cooper–Lehki testified to a reasonable degree of medical certainty that evaluations of the appellant completed at WVU showed him to be a normal adult heterosexual male who exhibits no signs of sexual deviance. The appellant wished to have Dr. Cooper–Lehki also testify about an interview of K.J. which was filmed by a social worker for Family Services. The court held an in-camera hearing to determined whether Dr. Cooper–Lehki should be permitted to give this testimony. During the in-camera hearing, Dr. Cooper–Lehki stated that "she had never seen anything like this" referring to the taped interview and explained that the assessment should have been completed by an unbiased examiner. Dr. Cooper–Lehki also testified during the in-camera hearing that accepted studies show that 5% to 35% of accusations of sex crimes are fabrications. She stated that false reporting can be about the details or the accusation may be completely made up and could be the product of poor therapy techniques, therapist influence, or coaching.

At the conclusion of the in-camera hearing, the circuit court ruled that Dr. Cooper–Lehki could rebut the social worker's assessment if

---

**3.** The case was submitted to the jury on a Friday, but the jury did not begin deliberations until Monday. A verdict was reached on Tuesday afternoon.

it was offered as evidence[4] but that she could not testify about incidents of false reporting or the reasons why the victims might make up such accusations. In this appeal, the appellant contends that the circuit court's limitation on Dr. Cooper–Lehki's testimony contravened Rule 702 of the West Virginia Rules of Evidence.[5] The appellant points out that Rule 702 favors expert testimony if it will assist the trier-of-fact to understand the evidence and determine a fact in issue. The appellant argues that in cases of "he said-she said" such as this one, the jury would quite naturally wonder why someone would fabricate such an accusation. He maintains that Dr. Cooper–Lehki's testimony would have addressed this question and thus should have been admitted.

After carefully reviewing the record and pertinent authorities, we do not find that the circuit court erred in limiting Dr. Cooper–Lehki's testimony. The circuit court was clearly willing to allow Dr. Cooper–Lehki to give rebuttal testimony had the State presented the social worker's assessment as evidence. Since the State did not present this evidence, Dr. Cooper–Lehki's testimony in that regard was properly excluded.[6] The circuit court also properly excluded the statistical evidence that Dr. Cooper–Lehki was going to relate to the jury. This evidence was clearly being offered by the appellant to attack the credibility of the alleged victims. Such evidence is clearly not admissible pursuant to Rule 608 of the West Virginia Rules of Evidence.

In Syllabus Point 4 of *State v. Roy*, 194 W.Va. 276, 460 S.E.2d 277 (1995), this Court explained that,

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to certain limitations. The evidence may refer only to character for truthfulness or untruthfulness. A fair reading of Rule 608(a) of the West Virginia Rules of Evidence provides that a witness may be impeached by proof that the witness is untruthful. Under this rule, no distinction is made between nonparty witnesses and party witnesses. The rule applies with equal force to the defendant in a criminal case. The form of proof may be either "reputation" or "opinion" evidence.

In this instance, the appellant was seeking to show that the alleged victims were lying using statistical information that could not be specifically related to them or even the facts of this case. Rule 608 clearly does not contemplate this type of evidence being used to attack the credibility of a witness. Furthermore, if such evidence were admissible, no defendant could ever be found guilty beyond a reasonable doubt when the only evidence presented by the State is the testimony of the alleged victim. Thus, we are unable to find that the circuit court erred in limiting Dr. Cooper–Lehki's testimony.[7]

### B. Denial of Motion for Judgment of Acquittal

The appellant next argues that the circuit court erred by denying his motion

---

4. The State never called the social worker as a witness.

5. Rule 702 of the West Virginia Rules of Evidence states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

6. It is noted that the trial transcript shows that there was some discussion about allowing the appellant to present the social worker's assessment during his case-in-chief, and then offering Dr. Cooper–Lehki's testimony as rebuttal. Even-

tually, counsel for the appellant decided that this would not be good trial strategy.

7. We note that in addressing this issue the circuit court also relied upon this Court's holding in Syllabus Point 5 of *State v. Harman*, 165 W.Va. 494, 270 S.E.2d 146 (1980), which provides that,

Evidence of psychiatric disability may be introduced when it affects the credibility of a material witness' testimony in a criminal case. Before such psychiatric disorder can be shown to impeach a witness' testimony, there must be a showing that the disorder affects the credibility of the witness and that the expert has had a sufficient opportunity to make the diagnosis of psychiatric disorder.

We do not find *Harman* applicable in this case because there was no evidence that either victim suffered from a psychiatric disability. Further-

for judgment of acquittal on Counts 2 and 4 of the indictment which charged him with sexual abuse by a custodian of K.J. and S.D. The appellant first contends that he was entitled to a judgment of acquittal on these charges because there was insufficient evidence that he was a custodian of either K.J. or S.D. as defined by W.Va.Code § 61–8D–1 (1988).[8] The appellant maintains that the circuit court improperly relied upon this Court's holding in Syllabus Point 1 of *State v. Stephens*, 206 W.Va. 420, 525 S.E.2d 301 (1999), which provides that:

> A babysitter may be a custodian under the provisions of *W.Va.Code*, 61–8D–5 [1998], and whether a babysitter [is] in fact a custodian under this statute is a question for the jury.

He contends that he was plainly not a babysitter in the usual and customary sense.

Upon review of the record, we find that there was sufficient evidence presented from which the jury could have reasonably concluded that the appellant was a custodian of S.D. and K.J. at the time the alleged offenses occurred. K.J., her mother, and the appellant's daughter each testified that K.J. and the appellant's daughter frequently spent nights at each other's houses. They lived on the same street. In addition, S.D. testified that the decision for her to stay at the appellant's house in 2002 was "discussed between her parents and the Cecils." Moreover, the appellant testified himself that, "I believe that when a child is in my home that I am supposed to look after that child. I believe that if anything happens to that child, I'm to immediately notify their parents." Thus, we find no merit to the appellant's argument that there was insufficient evidence that he was a custodian of the alleged victims.

The appellant next argues that he was entitled to a judgment of acquittal because the elements necessary to convict a person under W. Va.Code § 61–8B–7 (1984)[9] for sexual abuse in the first degree and W.Va. Code § 61–8D–5 (1998)[10] for sexual abuse by a custodian are the same. The appellant maintains that the principles of double jeopardy prevent him from being convicted of both offenses for a single act. Likewise, he argues that the elements are the same under W.Va.Code § 61–8B–4 (1991)[11] for sexual as-

---

more, Dr. Cooper–Lehki never met with the victims.

8. W.Va.Code § 61–8D–1(4) (1988) defines "custodian" as,

> [A] person over the age of fourteen years who has or shares actual physical possession or care and custody of a child on a full-time or temporary basis, regardless of whether such person has been granted custody of the child by any contract, agreement or legal proceeding. "Custodian" shall also include, but not be limited to, the spouse of a parent, guardian or custodian, or a person cohabitating with a parent, guardian or custodian in the relationship of husband and wife, where such spouse or other person shares actual physical possession or care and custody of a child with the parent, guardian or custodian.

9. W.Va.Code § 61–8B–7 (1984) provides, in pertinent part:

> (a) A person is guilty of sexual abuse in the first degree when:
> (1) Such person subjects another person to sexual contact without their consent, and the lack of consent results from forcible compulsion[.]

It is noted that this statute was amended in 2006, but this subsection of the statute was not altered.

10. W.Va.Code § 61–8D–5 (1998) provides, in pertinent part:

> (a) In addition to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection, as follows: If any parent, guardian or custodian of a child under his or her care, custody or control, shall engage in or attempt to engage in sexual exploitation of, or in sexual intercourse or sexual intrusion or sexual contact with, a child under his or her care, custody or control, notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such parent, guardian or custodian shall be guilty of a felony and, upon conviction thereof, shall be imprisoned in the penitentiary not less than ten nor more than twenty years, or fined not less than five hundred nor more than five thousand dollars and imprisoned in the penitentiary not less than ten years nor more than twenty years.

The 1998 version of the statute applies to the appellant as it was in effect at the time of the alleged offenses. However, it is noted that this statute was amended in 2005 to also apply to a "person in a position of trust in relation to a child."

11. W.Va.Code § 61–8B–4 (1991) provides, in pertinent part:

sault in the second degree and W.Va.Code 61–8D–5 for sexual abuse by a custodian. The appellant argues that because he was acquitted of sexual assault in the second degree of K.J., his conviction for sexual abuse by a custodian of K.J. cannot stand since it was based on the same act.

 Again, we find no merit to the appellant's arguments. In Syllabus Point 9 of *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253 (1992), this Court explained:

> W.Va.Code, 61–8D–5(a) (1988), states, in part: "In addition to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection[.]" Thus, the legislature has clearly and unequivocally declared its intention that sexual abuse involving parents, custodians, or guardians, W.Va. Code, 61–8D–5, is a separate and distinct crime from general sexual offenses, W.Va. Code, 61–8B–1, *et seq.,* for purposes of punishment.

With respect to inconsistent verdicts, this Court has observed that generally, appellate review is not available. *State v. Hall,* 174 W.Va. 599, 602, 328 S.E.2d 206, 210 (1985). Furthermore, we cannot say that the jury's verdicts with regard to Counts 3 and 4 were inconsistent. Sexual assault in the second degree requires proof of sexual intercourse or sexual intrusion whereas sexual abuse by a custodian only requires sexual contact. The jury could have found that only sexual contact occurred.[12]

### C. Juror Disqualification

 The appellant next argues that his convictions must be reversed because one of the jurors was not a resident of Putnam County and therefore, was disqualified from serving on the jury pursuant to W.Va.Code § 52–1–8(b) (1993).[13] The appellant contends that a member of the jury was improperly deemed qualified for jury service in Putnam County because he was actually living in Kanawha County at the time of the appellant's trial. The juror indicated on the juror questionnaire that he was currently residing in a rented house in Charleston, Kanawha County, but that he considered his permanent address to be his parents' house in Scott Depot, Putnam County.

 This Court has held that, "In order to receive a new trial, a party challenging a verdict based on the presence of a juror disqualified under W.Va.Code § 52–1–8(b)(6) must show that a timely objection was made to the disqualification or that ordinary diligence was exercised to ascertain the disqualification." Syllabus Point 4, *Proudfoot v. Dan's Marine Service, Inc.,* 210 W.Va. 498, 558 S.E.2d 298 (2001). Obviously, our holding also applies to a person disqualified under W.Va.Code § 52–1–8(b)(1). In this case, the record shows that with reasonable diligence, the appellant could have discovered the questionnaire completed by this juror as well as copies of correspondence that was sent to him concerning whether he was qualified to serve on the jury. The record further shows that this issue was not raised by the appellant below during post-trial motions, but instead has been presented for the first time in this appeal. Accordingly, this juror's possible disqualification[14] does not provide grounds for setting aside the appellant's convictions.

---

(a) A person is guilty of sexual assault in the second degree when:

(1) Such person engages in sexual intercourse or sexual intrusion with another person without the person's consent, and the lack of consent results from forcible compulsion[.]

**12.** We note that upon remand, the appellant cannot be retried on the charge of sexual assault in the second degree. "The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused." Syllabus Point 1, in part, *Conner v. Griffith,* 160 W.Va. 680, 238 S.E.2d 529 (1977).

**13.** W.Va.Code § 52–1–8(b) (1993) provides, in pertinent part:

> A prospective juror is disqualified to serve on a jury if the prospective juror:
>
> (1) Is not a citizen of the United States, at least eighteen years old and a resident of the county[.]

This statute was amended in 2007; however, this provision was not altered.

**14.** While it appears that this juror was disqualified because of the residency requirement, we do not reach that issue given the appellant's lack of diligence and untimely objection with respect to this matter.

### D. Juror Misconduct

■ The appellant next argues that there was misconduct and bias on the part of certain jury members. During the hearing on the appellant's post-trial motions, counsel for the appellant advised the circuit court that he had learned that the jury foreman had contacted another attorney [15] and informed that attorney that two other jurors had engaged in external investigations during the appellant's trial. In particular, it was asserted that these jurors had looked at the website MySpace.com after testimony was presented during the trial that at least one of the alleged victims in this case had maintained an account on the website.[16] The circuit court was further informed that one of these jurors discussed the website with her daughter who was a fellow student with S.D. and knew her family. The circuit court was also advised that the jury foreman had indicated that a third juror had made comments to other members of the jury concerning how certain evidence should be viewed. This third juror, who was an employee of the Department of Health and Human Resources ("DHHR"), advised other jury members that her experience required that the jurors place more weight on the children's testimony than that of the adults.

■ In Syllabus Point 2 of *State v. Scotchel*, 168 W.Va. 545, 285 S.E.2d 384 (1981), this Court observed that, "Courts recognize that a jury verdict may be impeached for matters of misconduct extrinsic to the jury's deliberative process." The independent investigation by jurors in this case concerning the website discussed during the appellant's trial constitutes misconduct extrinsic to the jury's deliberative process. Upon review of the record, we conclude that if this were the only misconduct at issue, we would be hesitant to find that it was sufficiently prejudicial to warrant setting aside the verdict. It appears that public access to the website information specifically maintained by K.J. was restricted or removed prior to trial and, therefore, could not have been viewed by these jurors. The fact that one of the jurors may have discussed the website with her daughter who knew S.D. and her family is more troubling. However, we are most concerned with the fact that one of the jurors may have misled the jury with regard to the weight to be given to the testimony of the witnesses.

■ By advising the other jurors that the testimony of the children had to be given greater weight than that of the appellant, the juror in question directly contradicted the circuit court's instructions.[17] In effect, this juror, who worked for the DHHR, told other members of the jury that an incorrect legal standard should be applied to the testimony of the alleged victims in this case. This Court has long held, "it is the duty of the jury to take the law from the court and to apply that law to the facts as it finds them from the evidence." *Nesbitt v. Flaccus*, 149 W.Va. 65, 77, 138 S.E.2d 859, 867 (1964). Simply put, "[t]he [jury] instructions are the

15. It appears that the jury foreman contacted an attorney who was a friend of his family seeking advice concerning what had happened during jury deliberations in the appellant's case. This attorney who was otherwise not involved in this case called the appellant's attorney and relayed this information. This attorney was then presented as a witness at the hearing on the appellant's post-trial motions.

16. The appellant alleged that K.J. had a MySpace account and had posted a comment stating "remember my face because I'm going to be famous someday." The appellant further contended that K.J. used the website to communicate with older boys contrary to her mother's testimony that K.J. was now withdrawn and did not like to be around older boys or men. This evidence was presented to the jury through the testimony of a private detective hired by the appellant's counsel.

17. With regard to the credit and weight to be given to the testimony of witnesses, the circuit court instructed the jury as follows:

A person accused of a crime should never be convicted on mere suspicion and conjecture. You are the sole judges of the credibility of the witnesses and the weight of the evidence. As used in these instructions the credibility of a witness means the truthfulness of the witness. The weight of the evidence means the extent to which you are or are not convinced by the evidence.

. . . .

[Y]ou may give to the testimony of the witness such credit and weight as you believe such evidence is entitled to receive.

law of the case." *Id.* Any suggestion by an employee of the State, and not just any State employee but an employee of the DHHR, the very agency which investigates child abuse and neglect, that a different standard should be applied to the alleged victims' testimony was inherently prejudicial to the appellant. "The jury in a criminal case is not the judge of the law ... but must follow the instructions of the court upon the law." Syllabus Point 3, *State v. Dickey,* in part, 48 W.Va. 325, 37 S.E. 695 (1900).

 Clearly, the juror in question had her own preconceived notions as to the weight that should be given to the testimony of the alleged victims and shared her views with the jury during its deliberations. In Syllabus Point 1 of *Scotchel,* this Court recognized that, "A jury verdict may not ordinarily be impeached based on matters that occur during the jury's deliberative process which matters relate to the manner or means the jury uses to arrive at its verdict." However, in *State v. Strauss,* 187 W.Va. 84, 415 S.E.2d 888 (1992), this Court reversed the defendant's conviction where a juror talked to one of the State's key witnesses during a recess at trial and then vouched for that witness' credibility during jury deliberations. In *State v. Sutphin,* 195 W.Va. 551, 557, 466 S.E.2d 402, 408 (1995), this Court explained that:

> We do not take lightly our responsibility in reviewing a verdict that is returned by a jury, one of whose members may have either prematurely reached a decision based on information not presented during the trial, or introduced into the jury room extrinsic information upon which other jurors may have based their decision. Any challenge to the lack of the impartiality of a jury assaults the very heart of due process. *Irvin v. Dowd,* 366 U.S. 717, 721–722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751, 755 (1961). "The inevitable result of misconduct on the part of a juror is to cast suspicion on the impartiality of the verdict rendered by a jury of which he is a member." *Legg v. Jones,* 126 W.Va. 757, 763, 30 S.E.2d 76, 79 (1944).

This Court has held that, "Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error." Syllabus Point 5, *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550 (1972). Having carefully reviewed the record, we conclude that the cumulative effect of each of the instances of juror misconduct discussed above made it impossible for the appellant to receive a fair trial. We are mindful that the independent investigation conducted by two of the jurors did not bear fruit, which arguably lessens the prejudicial effect, but notwithstanding that fact, the mere fact that members of a jury in a serious felony case conducted any extrajudicial investigation on their own is gross juror misconduct which simply cannot be permitted. Without meaningful censure, failure to properly punish such behavior would encourage or allow its repetition. Given the independent investigation by these jurors and the fact that another juror advised that the alleged victims' testimony should be given more weight than that of the appellant contrary to the judge's instructions and our law, we have no choice but to vacate the appellant's convictions.[18]

## IV.

## CONCLUSION

Accordingly for the reasons set forth above, the final order of the Circuit Court of Putnam County entered on April 28, 2006, is reversed. The appellant's convictions are vacated, and this case is remanded for a new trial.

Reversed and remanded.

Justice MAYNARD dissents.

---

18. As noted previously, the appellant also argues that his sentence is disproportionate in contravention of Article III, Section 5 of the West Virginia Constitution. Having found that the appellant's convictions must be vacated, we need not address this issue.