# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

April 10, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 14-0605** (Upshur County 13-F-52)

**Joseph Loudin,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Joseph Loudin, by counsel James T. Kratovil, appeals the May 5, 2014, order of the Circuit Court of Upshur County denying his motion to set aside the verdict and grant a new trial following his conviction for unlawful assault. Respondent the State of West Virginia, by counsel Derek Knopp, filed its response to which petitioner submitted his reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 13, 2013, petitioner was indicted on one count of unlawful assault related to an incident between petitioner and Brian Stewart. According to Mr. Stewart's testimony, on March 6, 2013, he was walking home with Carmen Mallett in Buckhannon, West Virginia. Frank Williams began yelling at Mr. Stewart from across the street, while petitioner and Brian Phillips were both with Mr. Williams. Mr. Stewart stated that Mr. Williams eventually crossed the street and hit him on the side of the head. Mr. Stewart reportedly reacted and grabbed Mr. Williams, causing the two of them to fall to the ground. After they stood up, the altercation between the two seemed to die down. At that point, the two groups exchanged words and petitioner punched Mr. Stewart in the eye. Mr. Stewart testified that petitioner then continuously grabbed and punched him until he was left on his knees bleeding profusely. Mr. Stewart denied throwing a punch in either fight. At the hospital, Mr. Stewart was diagnosed with an "orbital blowout fracture," nasal bone and septum fractures, and multiple abrasions to his face. He had surgery wherein a titanium plate was inserted into his face and screwed into his cheekbones. According to his testimony, Mr. Stewart still has numbness in the upper left side of his face.

Following a jury trial, petitioner was sentenced to an indeterminate term of incarceration of not less than one nor more than five years for unlawful assault. Petitioner was also ordered to pay restitution in the amount of $19,514.14. On May 5, 2014, the circuit court entered its "Order Following Motion Hearing." In that order, the circuit court quashed petitioner's subpoenas for

1

jurors Josh Wilt and Sheila Johns, finding that petitioner had not established bias on the part of either juror. The circuit court also denied petitioner's motion to set aside the verdict and grant a new trial due to juror prejudice. It further denied petitioner's motion to set aside the verdict and grant a new trial based upon petitioner's assertion that the evidence at trial did not support the verdict. Finally, the circuit court denied all post-trial motions. It is from that order that petitioner appeals.

On appeal, petitioner asserts five assignments of error. First, petitioner alleges that the circuit court abused its discretion by failing to grant his motion to set aside the verdict and grant a new trial on the basis that the jury was biased and/or prejudiced against him, in violation of his right to a fair trial decided by an impartial jury of his peers. Petitioner admits that counsel engaged in voir dire during jury selection, but he contends that he was not aware that any of the sitting jurors might potentially hold bias against him until after the trial had concluded. At that time, petitioner and his counsel discovered that juror Josh Wilt's sister previously contracted with petitioner to do some construction work for her and that she was unhappy with petitioner's work. They also learned that juror Sheila Johns' husband owned and operated a business from which petitioner purchased supplies. When petitioner filed for bankruptcy, his debt to Mr. Johns' business exceeded $5,000, but that debt was discharged as part of the bankruptcy. The information concerning these jurors was part of petitioner's motion to set aside the jury verdict and grant a new trial that was denied by the circuit court. Petitioner subpoenaed both jurors to appear at the hearing on that motion. However, the State presented an affidavit from Mrs. Johns and moved to quash the subpoenas. The motions to quash were granted by the circuit court. As set forth above, the motion to set aside the verdict and grant a new trial was ultimately denied.

> "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." Syl. pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

Syl. Pt. 1, *State v. Surbaugh*, 230 W.Va. 212, 737 S.E.2d 240 (2012). In addition, we have found that

> A motion for a new trial on the ground of the misconduct of a jury is addressed to the sound discretion of the court, which as a rule will not be disturbed on appeal where it appears that defendant was not injured by the misconduct or influence complained of. The question as to whether or not a juror has been subjected to improper influence affecting the verdict, is a fact primarily to be determined by the trial judge from the circumstances, which must be clear and convincing to require a new trial, proof of mere opportunity to influence the jury being insufficient.

*State v. Cecil*, 221 W.Va. 495, 500, 655 S.E.2d 517, 522 (2007) (quoting Syl. Pt. 7, *State v. Johnson*, 111 W.Va. 653, 164 S.E. 31 (1932)). "[T]he parties to a trial are responsible for conducting a full and complete *voir dire* during which, if the prospective jurors are forthright, all

relevant and meaningful information will be revealed which is necessary for the impaneling of a qualified jury." *Proudfoot v. Dan's Marine Service, Inc.*, 210 W.Va. 498, 505, 558 S.E.2d 298, 305 (2001). Petitioner does not allege that either juror was disqualified by statute or that either juror gave false information during voir dire. Further, Mrs. Johns' affidavit indicated that she never knew petitioner before sitting on the jury, and a witness testified that Mr. Wilt never indicated whether he had any like or dislike toward petitioner. Like the petitioner in *State v. Vetromile*, 211 W.Va. 223, 227, 564 S.E.2d 433, 437 (2002), petitioner in the instant case "has not presented an affidavit from a juror asserting that he or she had knowledge of prior wrongdoing by the [petitioner] and that this information was shared with other members of the jury." Instead, petitioner offers information regarding familial connections with these jurors without any proof or information that the jurors were even aware of petitioner's connections to those family members at the time the jury was selected or when the verdict was rendered. Therefore, we find no error in the circuit court's denial of petitioner's post-trial motions related to these jurors.

Petitioner's second assignment of error is that the circuit court abused its discretion by failing to grant his motion to set aside the verdict and grant a new trial on the basis that the evidence presented at trial did not support the jury's verdict. Petitioner argues that the State failed to prove, beyond a reasonable doubt, each and every element of the crime charged and the evidence clearly did not support the verdict. Petitioner is critical of testimony offered by eyewitness Carmen Mallett because she referred to the assailants as the "first guy" and the "second guy" throughout her testimony. He argues that Ms. Mallett had difficulty distinguishing which individual had committed certain acts and reluctantly identified petitioner by stating that she believed petitioner was the "second guy." Petitioner also points to the fact that neither of the State's medical expert witnesses could say with any degree of medical certainty exactly what caused the victim's orbital floor fracture – his fall to the sidewalk or being punched in the face by the "first guy," the "second guy," or a combination of the two. He contends that witnesses Mr. Phillips and Mr. Bailey, both of whom were present at the time of the incident, testified that the victim first swung at petitioner, petitioner blocked the victim's blow, petitioner punched the victim in the forehead, the victim dropped to his knees, and petitioner walked away from the scene. Petitioner asserts that it would have been "reasonable to expect a jury to conclude that: (1) [petitioner] was not guilty and acted in self-defense; or (2) [petitioner] was guilty of the lesser included offense of battery. . . ."[1] He argues that the evidence did not support the guilty verdict rendered by the jury, so his conviction should be reversed. However, he admits that the circuit court correctly instructed the jury on the elemental requirements of unlawful assault, the crime of which he was convicted.

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find

---

[1] As a third possible finding, petitioner asserts that the jury could have found that "petitioner was guilty of unlawful assault." It is unclear what petitioner intended to argue here, as he was found guilty of unlawful assault.

guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. Pt. 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Ms. Mallet testified that the victim was not the original aggressor and that the "first guy" walked across the street to hit the victim. She stated that after the "first guy" left, petitioner pushed Ms. Mallet down on the curb and attacked the victim. She further testified that the victim did not hit petitioner and that petitioner just began hitting the victim. Petitioner is correct that neither of the State's medical experts could identify the exact cause of the victim's orbital floor fracture, but they testified that the injuries were consistent with injuries caused by blows to the face with a fist. The victim testified that he saw a flash when petitioner hit him directly in the eye, while a medical expert testified that if the eye was hit the right way, the eye would be bruised, causing flashes of light. While conflicting evidence was presented to the jury, as set forth above, credibility determinations are for a jury and not an appellate court. In addition, "[a] new trial will not be granted in a criminal case on the ground of insufficiency of the evidence, where the verdict is based on oral testimony and involves the credibility of the witnesses." *State v. Maley*, 151 W.Va. 593, 598, 153 S.E.2d 827, 830 (1967). Therefore, petitioner has failed to satisfy his heavy burden. Based on the record before this Court, we find that the circuit court did not err in refusing to set aside the jury's verdict and grant a new trial related to the sufficiency of the evidence.

The third assignment of error of which petitioner complains relates to the court bailiff's communications with the jury during deliberations off the record and out of petitioner's presence. It is uncontroverted that during deliberations, the jury orally asked the bailiff a question outside the presence of counsel and the circuit court. The bailiff relayed the question to the judge, also outside the presence of petitioner and his counsel. The judge brought the jury into the courtroom and relayed his understanding of the question on the record, but petitioner complains that "we really do not have any way of knowing exactly what transpired in the two communications between the [c]ourt's [b]ailiff and the jury. The [j]udge's rendition of that communication can best be characterized as nothing more than hearsay upon hearsay . . ." Petitioner also criticizes the circuit court's failure to place the bailiff and/or jurors under oath to take testimony regarding the communication.

Petitioner is correct that he has a right to be present during all critical stages of a criminal proceeding. *See* Syl. Pt. 6, *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977). However, based upon our review of the record, it does not appear that this was a critical stage of the proceeding. After the jury had been in deliberations for a few minutes, the bailiff indicated to the court that the jury had a question. The circuit court then advised the parties that he intended to bring the jury out to give them further instruction about what to do in case they had a question, including putting any questions they have in writing. The judge inquired of counsel if they had any problems with this approach, to which each side responded in the negative. The jury was then reconvened, and the circuit court instructed the jury regarding the proper procedure to follow with regard to future questions they may have. The circuit court put the jury's question on the record, which was whether the jury could know who took a photo, that is not identified in the

4

record, and the time it was taken. The jury foreperson confirmed the nature of the question on the record. The circuit court then answered the question by stating that all of the evidence the jury could consider had to come in through the witness stand and that the court would not and could not repeat the testimony of witnesses or provide any information that did not come in on the witness stand. The court then inquired again whether counsel for either side had any objection, and the attorneys again responded in the negative. Based on petitioner's failure to object at that time and our finding that the brief communication at issue in this matter was not a critical stage from which petitioner was excluded, we find that the circuit court did not err in denying the motion for a new trial on these grounds.

Petitioner's fourth assignment of error is that the circuit court abused its discretion when it permitted the State to admit photographic evidence at trial that was obtained by law enforcement officers from petitioner's personal cell phone without a search warrant in violation of his right to be free from unreasonable searches. On the first day of trial, the State called Seth Jack as a witness and presented Mr. Jack with a photograph of the victim in the hospital, allegedly obtained from petitioner's cell phone. That photo was admitted into evidence, though petitioner denied ever showing that photo to Mr. Jack. Petitioner asserts several theories as to how the State came into possession of that photo, but they are all unsupported theories without any reference to the record to support any of these theories. Petitioner admits that his trial counsel stipulated to the State's use of the photo in question and did not object to its publication to the jury or its introduction into evidence. Petitioner cites *Riley v. California*, 134 S.Ct. 2473 (2014), decided on June 25, 2014, arguing that police may not, without a warrant, search digital information on a cell phone seized from an individual who has been arrested. He argues that because *Riley* was not issued until after his trial had concluded, his counsel did not have a basis to object to the admission of the photo.

"'A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.' Syl. pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998)." Syl. Pt. 2, *Surbaugh*, 230 W.Va. at 215, 737 S.E.2d at 243. In this case, the circuit court made its ruling prior to the issuance of the *Riley* case. However, there is an insufficient record before this Court to determine whether *Riley* is applicable in this instance. Petitioner's argument is based on the assumption that he had been arrested and that his phone was searched and seized without a warrant subsequent to his arrest. Due to his counsel's stipulation and failure to object to the admission of the photo, it is unclear from the record how the State came to possess the subject photo. Therefore, we find that the circuit court did not abuse its discretion in allowing the admission of this photo.

Petitioner's final assignment of error is that the circuit court abused its discretion by preventing his counsel from having an opportunity to meaningfully cross-examine a State witness at trial, thus denying petitioner the right to mount a defense on his own behalf and denying him the right to confront his accusers. On the first day of trial, Officer Tom Posey testified as part of the State's case-in-chief. During cross-examination, petitioner's counsel asked the officer to read a specified portion of the incident report. Petitioner contends that the trial court interrupted counsel and intervened before knowing what counsel's question would be or what Officer Posey's response may disclose. He asserts that the circuit court encouraged the State to object to counsel's questioning. The circuit court later found that the incident report was a hearsay document and that the officer could not read from the report unless it was a prior

inconsistent statement, despite petitioner's argument that the officer had authored it and identified it. However, the report was later admitted during the cross-examination of Chief Gregory, who apparently incorporated Office Posey's report into the chief's larger report. Petitioner argues that pursuant to Rule 803 of the West Virginia Rules of Evidence, police reports are not excluded in their entirety as hearsay, as the only thing Rule 803 excludes as hearsay in the context of a criminal case are the observations of police officers and law enforcement personnel. Therefore, he asserts that as long as counsel's questions related to Officer Posey's incident report focused on statements made by Officer Posey in that report, hearsay was not an issue.

> "'The extent of the cross-examination of a witness is a matter within the sound discretion of the trial court; and in the exercise of such discretion, in excluding or permitting questions on cross-examination, its action is not reviewable except in the case of manifest abuse or injustice.' Syl. pt. 4, *State v. Carduff*, 142 W.Va. 18, 93 S.E.2d 502 (1956)." Syllabus, *State v. Wood*, 167 W.Va. 700, 280 S.E.2d 309 (1981).

Syl. Pt. 12, *State v. McIntosh*, 207 W.Va. 561, 534 S.E.2d 757 (2000). During the cross-examination of Officer Posey, counsel approached the bench directly after petitioner's counsel asked the officer to read the first four statements of the narrative portion of the report. Petitioner's counsel immediately offered to withdraw the question, and the circuit court stated it did not know what the officer was reading from and it did not know what he was about to say. The circuit court then instructed counsel to ask the question differently. While the incident report at issue is not identified in the table of contents in the record before this Court, it appears from the trial transcript that the portion of the report counsel asked Officer Posey to read was related to witness statements given to the officer in the course of his investigation. The circuit court determined that it was hearsay, and there is insufficient information and documentation before this Court to show that there was manifest abuse or injustice as required for this Court to disturb the circuit court's ruling on this matter. In addition, the report did come into evidence through another witness, so the jury was able to consider it.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 10, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Allen H. Loughry II

**DISSENTING AND WRITING SEPARATELY:**

Justice Menis E. Ketchum

KETCHUM, J., dissenting:

The defendant raised legitimate factual concerns about the potential bias of two jurors. At the post trial hearing concerning this issue, the trial judge would not allow the defendant's lawyer to question the two jurors. The defendant's lawyer should have been given the opportunity to question these two jurors at the post trial hearing. Therefore, I dissent.